Joseph M. GIARRATANO, et al., Plaintiffs,

v.

Edward W. MURRAY, et al., Defendants.

Civ. A. No. 85–0655–R.

United States District Court, E.D. Virginia, Richmond Division.

Dec. 18, 1986.

Joseph M. Giarratano, pro se.

Gerald T. Zerkin and Michael Kozak, Zerkin, Heard & Kozak, Richmond, Va., Steven E. Landers, Jay Topkis, Deborah Livingston, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Johnathan Sasser, Moore & Van Allen, Durham, N.C., Martha Geer, Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N.C., for plaintiffs.

Richard F. Gorman, III, Asst. Atty. Gen., Robert Q. Harris, Guy W. Horsley, Jr., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

The plaintiffs in this matter, a class consisting of certain present and future death row inmates, have filed suit pursuant to 42 U.S.C. § 1983 against various officials of the Commonwealth of Virginia. The jurisdiction of this Court is premised on 28 U.S.C. §§ 1331 and 1343. Plaintiffs' contention is that Virginia is constitutionally required to provide them with counsel in post-conviction proceedings such as petitions for writs of certiorari to the United States Supreme Court or habeas corpus.

*Background*

Plaintiff Giarratano originally brought this action seeking declaratory and injunctive relief with respect to postconviction assistance of counsel. After permitting other death row inmates to intervene in the suit, the Court granted plaintiffs' motion for class certification. The class consists of

> ... all persons, now and in the future, sentenced to death in Virginia, whose sentences have been or are subsequently affirmed by the Virginia Supreme Court and who either (1) cannot afford to retain and do not have attorneys to represent them in connection with their post-conviction proceedings, or (2) could not afford to retain and did not have attorneys to represent them in connection with a particular post-conviction proceeding.

There are currently thirty-two inmates on Virginia's Death Row.

After full trial on the merits, the Court took the case under advisement and permitted the parties to file posttrial briefs and other memoranda. Being in receipt of those filings, the Court is now prepared to render its decision.

*Merits*

Plaintiffs assert a number of federal constitutional grounds to support their claim that they are entitled to postconviction assistance of counsel. These grounds encompass the equal protection clause, the sixth amendment, the eighth amendment, Article I, and the due process clause of the fourteenth amendment, as well as the right of access to the courts enunciated in *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Although the Court entertains serious doubts as to the viability of many of these theories, it is satisfied that the United States Supreme Court's decision in *Bounds* dictates that the plaintiffs here be granted some form of relief. Consequently, the Court will not address the remaining grounds.

### 1. *Bounds v. Smith*

In *Bounds*, the Supreme Court considered a section 1983 action filed by prison inmates who sought legal research facilities to assist them in filing habeas corpus petitions and section 1983 claims. The inmates alleged that North Carolina, by failing to provide such facilities, denied access to the courts in violation of the fourteenth amendment.

The Supreme Court agreed, holding that prison authorities are required "to assist inmates in the preparation and filing of meaningful legal papers" by providing prisoners with either adequate law libraries or assistance from legally trained personnel. *Bounds, supra,* 430 U.S. at 828, 97 S.Ct. at 1498. Rejecting the argument that states could not be obligated to expend funds to effectuate such a right, the Court noted that its previous decisions "have consistently required states to shoulder affirmative obligations to assure *all* prisoners meaningful access to the courts." *Id.* at 824, 97 S.Ct. at 1496 (emphasis added).

The Court noted that "meaningful access" is the touchstone. *Id.* at 823, 97 S.Ct. at 1495. The Court expounded upon this concept by phrasing the issue as "whether law libraries or other forms of legal assistance are needed to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental rights to the courts." *Id.* at 825, 97 S.Ct. at 1496. In concluding that the assistance was required, the Court implicitly rejected the argument that inmates are ill-equipped to use law libraries. The Court noted in passing that "this Court's experience indicates that *pro se* petitioners are capable of using lawbooks to ..." raise legitimate claims. *Id.* at 826, 97 S.Ct. at 1497. This assumption provided the basis for the alternative nature of the required relief: trained legal assistance *or* adequate law libraries.

■ In the present case, however, the evidence at trial demonstrated that this assumption is invalid with respect to death row prisoners in Virginia. Three considerations underlie this determination.

The first is the limited amount of time death row inmates may have to prepare and present their petitions to the courts. In Virginia, appeal of right lies to the Virginia Supreme Court in all cases in which the death penalty is imposed. Va.Code § 17-110.1. Once the conviction and sentence are affirmed, the sentence may be carried out at any time, provided thirty days has elapsed since the imposition of sentence. Va.Code § 53.1-232. While stays of execution may be secured in ap-

propriate cases to enable a prisoner to prepare a petition for a writ of habeas corpus in the state (and later federal) courts, the result is that a large amount of legal work must be compressed into a limited amount of time. Even assuming that a death row inmate would be intellectually capable of such a task, it is beyond cavil that a prisoner unversed in the law and methods of legal research would need much more time than a trained lawyer to explore his case. *See Williams v. Leeke,* 584 F.2d 1336, 1339 (4th Cir.1978).

The second consideration is the complexity and difficulty of the legal work itself. In Virginia, the capital trial is bifurcated, entailing separate proceedings to determine guilt and to set the appropriate punishment. Aside from analyzing the voluminous transcript of the guilt determination phase which not infrequently lasts several days, a great deal of time must be devoted to analyzing the issues of mitigation and aggravation characteristic of the sentencing phase of a capital case.

The third consideration is that at the time the inmate is required to rapidly perform the complex and difficult work necessary to file a timely petition, he is the least capable of doing so. The evidence gives rise to a fair inference that an inmate preparing himself and his family for impending death is incapable of performing the mental functions necessary to adequately pursue his claims.

Based upon these considerations, the Court finds that the plaintiffs are incapable of effectively using lawbooks to raise their claims. Consequently, the provision of a library does little to satisfy Virginia's obligation to "assist inmates in the preparation and filing of meaningful legal papers" with respect to Virginia death row prisoners. *See Bounds, supra,* 430 U.S. at 828, 97 S.Ct. at 1498. Accordingly, Virginia must fulfill its duty by providing these inmates trained legal assistance. *Id.* Therefore, the Court now turns to an examination of the assistance presently provided by Virginia to determine whether this constitutional requirement is met.

### 2. *Virginia's Current Assistance*

Virginia presently provides two forms of trained legal assistance to death row inmates pursuing post-conviction claims. Virginia provides for the appointment of attorneys to the various penal institutions to assist inmates in any matter related to incarceration, *see* Va.Code § 53.1–40, and Virginia provides for the appointment of counsel under certain circumstances to indigents who have resided in Virginia continuously for six months, *see* Va.Code § 14.1–183. These provisions will be analyzed in light of the Commonwealth's obligation to provide meaningful access to the courts.

■ First, pursuant to the Virginia Code, attorneys have been assigned to each institution to assist all inmates in matters related to incarceration. The defendants allege that these institutional attorneys provide the trained legal assistance mandated by *Bounds*. This allegation is not without support. *See, e.g., Williams v. Leeke*, 584 F.2d 1336, 1339 (1978) (Virginia's system of making lawyers regularly available to prisoners for consultation and advice satisfies duty under *Bounds*). With respect to death row prisoners, however, the Court finds that the assistance these attorneys are able to provide is inadequate both in fact and in law.

Currently there are seven institutional attorneys attempting to meet the needs of over 2,000 prisoners. No pretense is made by the defendants in this case that these few attorneys could handle the needs of death row prisoners in addition to providing assistance to other inmates. Although no institutional attorney has helped to prepare the habeas corpus petition of a single death row inmate, the testimony at trial indicated that each attorney could not adequately handle more than one capital case at a time. Moreover, they are not hired to work full time; they split time between their private practice and their institutional work.

Even if Virginia appointed additional institutional attorneys to service death row inmates, its duty under *Bounds* would not be fulfilled. The scope of assistance these attorneys provide is simply too limited. The evidence indicated that they do not perform factual inquiries of the kind necessitated by death penalty issues. They act only as legal advisors or, to borrow the phrase of one such attorney, as "talking lawbooks." Additionally, they do not sign pleadings or make court appearances. *See Peterson v. Davis*, 421 F.Supp. 1220 (E.D. Va.1976), *aff'd*, 562 F.2d 48 (4th Cir.1977).

For death row inmates, more than the sporadic assistance of a "talking lawbook" is required to enable them to file meaningful legal papers. With respect to these plaintiffs, the Court concludes that only the continuous services of an attorney to investigate, research, and present claimed violations of fundamental rights provides them the meaningful access to the courts guaranteed by the Constitution. Having determined that the assistance of institutional attorneys falls short of this requirement, the Court now turns to the second form of assistance provided by Virginia.

■ As the Court has indicated, supra, in addition to institutional attorneys, Virginia courts are authorized to appoint counsel to individual inmates pursuant to the following provision:

> Any person, who has been a resident of this State for a continuous period of six months, who, on account of his poverty is unable to pay fees or costs may be allowed by a court to sue or defend a suit therein, without paying fees or costs; whereupon he shall have, from any counsel whom the court may assign him, and from all officers, all needful services and process, without any fees to them therefor, except what may be included in the costs recovered from the opposite party.

Va.Code § 14.1–183.[1] Although such limitations do not appear on the face of the

1. The Commonwealth has argued that at least part of the plaintiffs' incentive in bringing this action is not its opposition to appointment of counsel pursuant to this section, but its objection to state court appointment of counsel of a petitioner's choosing. This contention, however, is not supported by the evidence. In at least one instance, in a matter before the Circuit Court of Clarke County, the Commonwealth's counsel contended, unsuccessfully, that the

statute, appointments are made under this provision only after a petition is filed and then only if a nonfrivolous claim is raised.[2] *See Cooper v. Haas,* 210 Va. 279, 170 S.E.2d 5 (1969); *Darnell v. Peyton,* 208 Va. 675, 160 S.E.2d 749 (1968).

Aside from the obvious residency restriction, the timing of the appointment is a fatal defect with respect to the requirements of *Bounds.* Because an inmate must already have filed his petition to have the matter of appointed counsel considered, he would not receive the attorney's assistance in the critical stages of developing his claims. *See Bounds, supra,* 430 U.S. at 828 n. 17, 97 S.Ct. at 1498 n. 7. Consequently, attorneys appointed pursuant to this statute are, by reason of the lateness of the appointment, unable to provide all of the required assistance.

To summarize, the pre-petition assistance provided by institutional attorneys is too limited while the post-petition appointment of counsel is untimely. Nor do these provisions viewed together prove adequate. Although ample assistance is provided at trial and on appeal, the requisite aid in preparing the petition itself is absent. The matter of a death row inmate's habeas corpus petition is too important—both to society, which has a compelling interest in insuring that a sentence of death has been constitutionally imposed, as well as to the individual involved—to leave to, what is at best, a patchwork system of assistance. These plaintiffs must have the continuous assistance of counsel in developing their claims.

In the past, Virginia had no need to take affirmative action to provide counsel to inmates pursuing post-conviction relief. Attorneys volunteered their services or were recruited to provide pro bono assistance and representation to death row prisoners. Those days are gone. The evidence conclusively establishes that today few—very few—attorneys are willing to voluntarily represent death row inmates in post conviction efforts. One lawyer who did accept such a case testified that he expended in excess of five hundred hours in the preparation and handling of it. He expressed the emotional drain to be such as to preclude his willing acceptance of another such assignment.

The stakes are simply too high for this Court not to grant, at least in part, some relief. In view of the scarcity of competent and willing counsel to assist indigent death row inmates in their exercise of seeking post conviction relief, some relief is both necessary and warranted. The reluctance of competent counsel in reference to these matters requires at a minimum the supervision of a Court in the appointment of competent counsel.

 Because Virginia already appoints counsel to those inmates who file habeas corpus petitions containing non-frivolous claims, the relief granted today requires only a slight modification of the current assistance. Virginia need only appoint counsel to death row inmates who request such assistance before the petition is filed in order to comply. This modification should not impose an onerous burden on the Commonwealth. Given the relatively small number of inmates added to Virgi-

Court had no authority to appoint counsel in a habeas corpus proceeding. Consequently, the availability of such counsel is as much at issue as their efficacy.

2. Even assuming that all death row inmates with meritorious claims are capable of filing a petition with at least one nonfrivolous ground (an assumption somewhat at odds with the Court's findings), the delay in receiving comprehensive assistance of counsel, as discussed below, may be devastating. Under Virginia law, all claims, the facts of which are known to the petitioner at the time of filing, must be included in that petition or they may not be raised successfully in a subsequent filing. Va.Code § 8.01–654(B)(2). Because federal courts generally may not consider claims that are barred by Virginia procedural rules, *see Whitley v. Bair,* 802 F.2d 1487 (4th Cir.1986), those omitted claims would not be considered by a federal forum as well. Finally, the Supreme Court expressly noted that because the "main concern here is 'protecting the ability of an inmate to prepare a petition ...,' it is irrelevant that [the state] authorizes expenditures of funds for appointment of counsel in some state post-conviction proceedings for prisoners whose claims survive initial review by the courts." *Bounds, supra,* 430 U.S. at 828 n. 17, 97 S.Ct. at 1498 n. 17 (citation omitted).

nia's death row each year, the additional cost to the state should be relatively small.[3]

Having concluded that state appointed counsel is required, the Court must address the full scope of the necessary assistance.

### 3. *The Scope of the Requisite Assistance*

Plaintiffs seek state appointed counsel to prepare and argue petitions for both writs of certiorari to the Supreme Court and writs of habeas corpus in state and federal courts. Consequently, there are two dimensions to the requested relief that must be defined: first, whether the nature of the assistance encompasses petitions for certiorari as well as habeas corpus; and second, whether the assistance extends to both state and federal courts.[4]

Whether the right of access extends to assistance in filing petitions for writs of certiorari to the Supreme Court was not addressed in *Bounds*. In *Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1973), however, the Supreme Court did consider whether the due process clause of the fourteenth amendment required appointment of counsel in such cases. In *Moffitt*, the Court first analyzed the line of cases later relied on in *Bounds* to define the right of access. The Court held, however, that appointment of counsel was not required for petitioners seeking discretionary review. Part of *Moffitt's* rationale was

that a court addressing a discretionary review petition is not primarily concerned with the correctness of the judgment below, but rather the jurisprudential importance of the issues involved. *See Moffitt, supra,* 417 U.S. at 617, 94 S.Ct. at 2447.[5]

Pursuant to *Moffitt*, therefore, this Court concludes that assistance in the filing of petitions for writs of certiorari is not required.

The second issue, whether state appointed counsel must assist in both state and federal habeas proceedings, has never been directly addressed by the Supreme Court. *Bounds* and *Moffitt*, however provide ample, albeit conflicting, guidance. Although the question is far from settled, this Court believes that the relief granted should be limited to state post-conviction proceedings.

In *Moffitt*, the Supreme Court, in rejecting a claim that the states must appoint counsel for indigents seeking a writ of certiorari, made two observations that are relevant here. First, the court noted that, in contrast to the situation in which a state itself provides an avenue of review, it would be anomolous to require a state to provide counsel to one seeking federal statutorily created relief.[6] *Moffitt, supra,* 417 U.S. at 617–18, 94 S.Ct. at 2447–48. As with the writ of certiorari, the right to seek federal habeas corpus relief is not granted by the state, but rather by Congress. *See* 28 U.S.C. § 2254.[7]

---

**3.** While economic factors may be given some consideration by the Court, the cost of protecting a constitutional right cannot in itself be dispositive. *See Bounds, supra,* 430 U.S. at 825, 97 S.Ct. at 1496.

**4.** In light of the determination, discussed infra, that the reasoning in *Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1973), governs the disposition of these two issues, the Court is of the view that changing the theory under which relief is sought would not alter the analysis. Consequently, the additional grounds raised by the plaintiffs need not be addressed separately from the access theory of *Bounds*.

**5.** Additionally, the Court reasoned that pro se petitioners can present their claims adequately for discretionary review because they already have had counsel for their initial appeals of right and are thus likely to have appellate briefs, trial transcripts, and intermediate court opinions at their disposal. *See Moffitt, supra,* 417

U.S. at 615–18, 94 S.Ct. at 2446–47; *Bounds, supra,* 430 U.S. at 827, 97 S.Ct. at 1497. The *Moffitt* court also indicated a difficulty in finding constitutionally required state-appointed counsel for federal statutorily created review. *Moffitt, supra,* 417 U.S. at 617–18, 94 S.Ct. at 2447–48.

**6.** The Supreme Court noted that "the argument ... that the state having once created a right of appeal must give all persons an equal opportunity to enjoy the right, is by its terms inapplicable." *Moffitt, supra,* 417 U.S. at 617, 94 S.Ct. at 2447 (referring to *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) and *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)).

**7.** Although federal habeas corpus relief is provided for by statute, it has a constitutional dimension as well. As noted by the late Judge Tamm in *Palmore v. Superior Court of the Dis-*

Second, in considering a petition for a writ of certiorari, the Court observed that it would have available the appellate brief prepared by counsel, a transcript, and the opinion of any state courts that had addressed the issues. *Moffitt, supra,* 417 U.S. at 616, 94 S.Ct. at 2446. Similarly, in light of the exhaustion requirement,[8] a federal court considering a petition for habeas corpus would likewise have the brief of counsel, a transcript, and opinions from the Virginia courts that have considered the matters. In sum, the reasoning in *Moffitt* indicates that relief here should be limited to appointment of counsel in state habeas proceedings.

The result in *Bounds,* however, conflicts with this reasoning. In *Bounds,* the court did not distinguish between federal and state habeas proceedings in ordering the creation of libraries or assistance programs to aid inmates in filing petitions. The Court, however, did not expressly address the instant issue or the concern expressed in *Moffitt.*

On the basis of the teachings of *Moffitt, supra,* this Court is of the view that relief should be limited to state habeas proceedings. Such a legal conclusion does not, however, signify that an indigent death row petitioner will be denied the assistance of counsel in federal court. Pursuant to 28 U.S.C. § 1915, the federal courts are empowered to appoint counsel under certain circumstances to indigent litigants before them.[9] Consequently, a death row inmate may continue to receive legal assistance in pursuing his claims in federal court.

As a final matter, the evidence at trial indicated that the substitution of counsel at the doors of the federal courthouse would have catastrophic effects on the ability of the new attorney to adequately prepare and present an inmate's claims in the short

time provided. These concerns need not be addressed at present, however, for the Court envisions little difficulty in the creation of a system of representation in which the same attorney may provide representation in both state and federal courts, but is compensated by different sources for efforts in each.

*Conclusion*

For the reasons stated above, the Court will order Virginia to develop a program whereby counsel is appointed upon request to death row inmates who cannot afford to retain and do not have an attorney to represent them in connection with pursuing habeas corpus relief in the state courts.

An appropriate order shall issue.

### FINAL JUDGMENT ORDER

For the reasons stated in the accompanying Memorandum this day filed, and deeming it just and proper so to do, it is hereby ADJUDGED and ORDERED as follows:

1. The Court declares that indigent Virginia death row inmates are entitled to the appointment of counsel upon request to assist them in pursuing habeas corpus relief in the state courts.

2. The defendants shall develop a system whereby attorneys may be appointed to the death row inmates individually as provided above.

3. The plaintiffs are entitled to their taxable costs and attorneys fees as provided by law.

4. Counsel for the respective parties shall attempt to reach agreement as to counsel fees. Any such agreement shall be without prejudice to defendants' right to contest the right of plaintiffs to recover same.

---

*trict of Columbia,* 515 F.2d 1294, 1301 (1975), *vacated and remanded,* 429 U.S. 915, 97 S.Ct. 305, 50 L.Ed.2d 280 (1976), "[h]abeas corpus holds a unique position in our constitutional scheme. It is nowhere directly constitutionally endowed, but the Constitution, through the suspension clause, protects against its interference."

8. *See* 28 U.S.C. § 2254(b).

9. Such appointment would come only after the inmate has filed his § 2254 petition. *Cf. Gordon v. Leeke,* 574 F.2d 1147, 1153 (4th Cir.) *cert. denied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978) (district court should appoint counsel to assist a *pro se* litigant who raises a colorable claim but lacks the capacity to present it).

This action shall, upon agreement or order as to counsel fees stand dismissed with leave to the plaintiffs to petition, for good cause shown, to reopen same for purposes of effectuating the requirements of this decree.

Let the Clerk send copies of this order and the accompanying memorandum to all counsel of record.