836 F.2d 1421
 56 USLW 2407
 Joseph M. GIARRATANO; Johnny Watkins, Jr.; Richard T.
Boggs, Plaintiffs-Appellees,
v.
Edward W. MURRAY, Director, Virginia Department of
Corrections; Gerald L. Baliles, Governor; Robert
N. Baldwin; Michael Samberg, Warden, in
their official capacities,
Defendants-Appellants.
Joseph M. GIARRATANO; Johnny Watkins, Jr.; Richard T.
Boggs, Plaintiffs-Appellants,
v.
Edward W. MURRAY, Director, Virginia Department of
Corrections; Gerald L. Baliles, Governor; Robert
N. Baldwin; Michael Samberg, Warden, in
their official capacities,
Defendants-Appellees.
 Nos. 87-7518, 87-7519.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 9, 1987.
Decided Jan. 4, 1988.
 
 Robert Q. Harris, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., Richard F. Gorman, III, Asst. Atty. Gen., Guy W. Horsley, Jr., Sr. Asst. Atty. Gen., on brief), for defendants-appellants.
 Steven E. Landers (Jay Topkis, Alisa D. Shudofsky, Clyde Allison, Paul, Weiss, Rifkind, Wharton & Garrison, Gerald T. Zerkin, Zerkin, Heard & Kozak, Martha A. Geer, Smith, Patterson, Follin, Curtis, James & Harkavy, Jonathan D. Sasser, Moore & Van Allen, on brief), for plaintiffs-appellees.
 Eugene C. Thomas, President, American Bar Ass'n, Ronald J. Tabak, Sara-Ann Determan, Charles G. Cole, on brief, for amicus curiae American Bar Ass'n.
 Before HALL and WILKINS, Circuit Judges, and G. ROSS ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.
 WILKINS, Circuit Judge:
 
 
 1
 This is a consolidated appeal and cross-appeal arising from a class action initiated by death row inmates in the Commonwealth of Virginia pursuant to 42 U.S.C.A. Sec. 1983 (West 1981). The Commonwealth appeals an order of the district court, 668 F.Supp. 511, requiring the automatic appointment of counsel for death row inmates, on request, to prepare state habeas corpus petitions challenging their convictions and sentences. The inmate class cross-appeals the district court's refusal to order the automatic appointment of counsel for preparation of federal post-conviction petitions. We reverse in part and affirm in part.
 
 I.
 
 2
 This action was initiated by Joe Giarratano, a Virginia death row inmate, and other Virginia "John Doe" inmates also on death row. Giarratano was convicted and sentenced in 1979 for the murder of a Virginia woman and the rape and murder of her fifteen-year-old daughter. His conviction and sentence were affirmed by the Virginia Supreme Court in April, 1980. Giarratano v. Commonwealth, 220 Va. 1064, 266 S.E.2d 94 (1980). For the past seven years he has awaited execution.
 
 
 3
 Death row inmates Boggs, Watkins, Wise, Beaver and Frye, through their attorneys, filed a class action and complaint in intervention naming as defendants the Governor of Virginia, the Executive Secretary of the Virginia Supreme Court, the Director of the Virginia Department of Corrections, and the Warden of the State Penitentiary in Richmond. Plaintiffs asserted that under the eighth amendment, the equal protection and due process clauses of the fourteenth amendment, the sixth amendment, and the constitutional right to meaningful access to the courts, the defendants were required to automatically appoint "each indigent death row inmate competent and adequately paid counsel to represent him in connection with post-conviction proceedings." The matter was tried by the court. The district court concluded that Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) "dictates that the plaintiffs here be granted some form of relief."
 
 
 4
 In Bounds, the Supreme Court held that the constitutional right of access to the courts is satisfied by providing inmates "adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828, 97 S.Ct. at 1498. The district court found in this case that the provision of a library did little to satisfy Virginia's obligation to assist death row inmates in the preparation and filing of meaningful legal papers as required by Bounds. The court found that Virginia provides inmates with a total of seven institutional attorneys who act in an advisory capacity in preparing post-conviction petitions, as well as appointed counsel to assist in cases which require an evidentiary hearing. However, the advisory services were held inadequate for death row inmates because the attorneys conduct no "factual inquiries of the kind necessitated by death penalty issues." Although Virginia courts appoint counsel to represent any inmate who alleges nonfrivolous issues which require a hearing, Darnell v. Peyton, 208 Va. 675, 160 S.E.2d 749 (1968), the timing of this appointment was held insufficient as to these inmates because "by reason of the lateness of the appointment, [they are] unable to provide all of the required assistance."
 
 
 5
 The district court determined that the legal assistance provided by Virginia for death row inmates is "at best, a patchwork system." The court concluded that "only the continuous services of an attorney to investigate, research and present claimed violations of fundamental rights provides them the meaningful access to the courts guaranteed by the Constitution."
 
 
 6
 The findings given by the district court in support of this conclusion were (1) the time limitations upon death row inmates to prepare and present their petitions, (2) the complexity and difficulty of the legal work, and (3) the emotional instability suffered by inmates preparing for "impending death." As a result, the court ordered Virginia to "develop a system whereby attorneys may be appointed to the death row inmates individually" upon request to draft state petitions, but not as to federal petitions. The court described the relief granted as requiring "only a slight modification of the current assistance" now provided by Virginia.
 
 
 7
 We are bound by the district court's findings of fact indicating that Virginia was not in compliance with its constitutional obligation to provide death row inmates meaningful access to the courts only if they are not clearly erroneous. Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). The pivotal conclusion on which the logic of the district court turns is that the legal complexity of any death penalty case presents a per se exception to the standards by which meaningful access is assessed under Bounds.
 
 
 8
 The record established that upon request these inmates are provided copies of the transcript, briefs, and state court opinion from the initial automatic appeal of their conviction. Testimony from Plaintiffs' witnesses established the critical assistance these materials provide in the preparation of habeas corpus petitions. In compliance with Bounds, Virginia provides prison library facilities which are more than adequate to meet the needs of all inmates. As Giarratano testified, Virginia provides a "decent" law library which includes Federal Supplement, Federal Reports, United States Supreme Court Reporter, the Federal Digest, Virginia Reports, and the United States Code. The success of Giarratano in at least two other pro se actions demonstrates the sufficiency of the assistance provided. Giarratano v. Bass, 596 F.Supp. 818 (E.D.Va.1984). Virginia has thus satisfied requirements of meaningful access by providing an adequate law library, and it also provides a system of institutional attorneys to assist inmates.
 
 
 9
 Further, counsel is appointed under Va.Code Ann. Sec. 14.1-183 (1950 & Repl.Vol.1985) for any state post-conviction petition which raises a nonfrivolous issue and requires a hearing. Virginia allows liberal amendment of pro se habeas corpus petitions. Plaintiffs' expert on Virginia post-conviction proceedings testified that he had no firsthand knowledge of a Virginia Circuit Court ever denying amendment to a habeas corpus petition in a capital case. And, the record does not identify any instance in which a Virginia death row inmate has properly requested and been denied assistance of counsel in pursuing his first habeas corpus petition.
 
 
 10
 We hold that the district court clearly erred in concluding that the Commonwealth of Virginia was not meeting its obligation and abused its discretion in fashioning such an extreme remedy. Virginia fulfills its obligation under Bounds to provide all inmates with meaningful access to the courts, and there is no factual or legal justification for requiring a higher standard of access for death row inmates. In essence, by reading the record to support a sweeping extension of Bounds, the district court has, under the guise of meaningful access, established a right of counsel where none is required by the Constitution.
 
 
 11
 A. Meaningful Access and Pennsylvania v. Finley
 
 
 12
 After the district court rendered its decision the Supreme Court decided Pennsylvania v. Finley, 481 U.S. ---, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). In that case the Court held that the procedures articulated in Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), which must be satisfied before appointed counsel may withdraw from a frivolous appeal, do not apply to state post-conviction proceedings because there is no constitutional right to counsel in those proceedings:
 
 
 13
 Anders did not set down an independent constitutional command that all lawyers, in all proceedings, must follow these particular procedures. Rather, Anders established a prophylactic framework that is relevant when, and only when, a litigant has a previously established constitutional right to counsel. We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks to their convictions, and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further.
 
 
 14
 Finley, 481 U.S. ---, 107 S.Ct. 1990, 95 L.Ed.2d at 545 (citation omitted).
 
 
 15
 The decision in Finley relies heavily on Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). In Ross, the Supreme Court held that states are not required to appoint counsel for indigents seeking a writ of certiorari. In the plainest language the decision is grounded upon principles of meaningful access: "We do not believe that it can be said, therefore, that a defendant in respondent's circumstances is denied meaningful access to the North Carolina Supreme Court simply because the State does not appoint counsel to aid him in seeking [discretionary] review in that court." Id. at 615, 94 S.Ct. at 2446.
 
 
 16
 The reasoning of Ross effectively compelled the result reached in Finley:
 
 
 17
 We think that the analysis that we followed in Ross forecloses respondent's constitutional claim. The procedures followed by respondent's habeas counsel fully comported with fundamental fairness. Postconviction relief is even further removed from the criminal trial than is discretionary direct review.... States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well.
 
 
 18
 Nor was the equal protection guarantee of "meaningful access" violated in this case.... In Ross, we concluded that the defendant's access to the trial record and the appellate briefs and opinions provided sufficient tools for the pro se litigant to gain meaningful access to courts that possess a discretionary power of review. We think that the same conclusion necessarily obtains with respect to postconviction review.
 
 
 19
 Finley, 481 U.S. ---, 107 S.Ct. 1990, 95 L.Ed.2d at 547 (citations omitted).
 
 
 20
 The result in Finley was compelled because there was no fundamental right to counsel in the first instance, a factor that was essential to the result reached. It was this, rather than the potentially distinguishable nature of the proceedings (appellate in Anders versus trial in Finley ), which dictated the outcome. We are concerned here with the identical type of proceeding addressed in Finley, state habeas corpus, on the heels of a clear and recent statement by the Supreme Court that there is no previously established constitutional right to counsel in state habeas corpus proceedings.
 
 
 21
 Although Finley did not address the rule enunciated in Bounds, this does not diminish its application to the issue before us. In Bounds the issue was access to "sources of legal knowledge" to prepare meaningful papers, 430 U.S. at 817, 97 S.Ct. 1493, and the Court explicitly stated that, for inmates seeking to file post-conviction papers, meaningful access to the courts can be satisfied by either providing adequate law libraries or "adequate assistance from persons trained in the law." Id. 430 U.S. at 828, 97 S.Ct. at 1498. The rule of Bounds was not addressed in Finley only because Bounds was not intended to imply a broad-based right of counsel as the district court here so interpreted it. Hooks v. Wainwright, 775 F.2d 1433 (11th Cir.1985), cert. denied, --- U.S. ----, 107 S.Ct. 313, 93 L.Ed. 287 (1986).
 
 
 22
 The final basis upon which Finley could, under the district court's reasoning, be argued as distinguishable is that Finley did not involve the death penalty and "there is a significant constitutional difference between the death penalty and lesser punishments." Beck v. Alabama, 447 U.S. 625, 637, 100 S.Ct. 2382, 2389, 65 L.Ed.2d 392 (1980). Therefore, the question is essentially whether on the record before us Plaintiffs constitute an exception to Finley, or justify an exceptional application of Bounds.
 
 
 23
 B. The Death Penalty and Virginia Procedures
 
 
 24
 It is now settled that a state may deprive a defendant of life after conviction of aggravated murder. Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Since Gregg, the Supreme Court has focused on "the procedures by which convicted defendants were selected for the death penalty rather than on the actual punishment inflicted." Id. at 179, 96 S.Ct. at 2928. The "significant constitutional difference" of death penalty cases is therefore inapplicable to the issue before us. The "constitutional difference" is, under Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) and subsequent decisions, essentially concerned with a sentencing system which must not be "cruel and unusual in the same way that being struck by lightning is cruel and unusual." Furman, 408 U.S. at 309, 92 S.Ct. at 2762 (Stewart, J., concurring).
 
 
 25
 Under Furman, the sentencing procedures considered were unconstitutional because the death penalty was, by virtue of unguided decision-making, "so wantonly and so freakishly imposed." Id. at 310, 92 S.Ct. at 2763. Thus, the "significant constitutional difference" mandated the establishment of procedures to ensure that circumstances under which individual sentences of death are imposed demonstrate a principled, consistent basis for the fact-finding decision, and a greater degree of reliability than is required in noncapital sentencing. See Gregg, 428 U.S. at 206-07, 96 S.Ct. at 2940-41; Beck v. Alabama, 447 U.S. at 637-38, 100 S.Ct. at 2389-90 ("significant constitutional difference" means that the procedural rules by which a sentence of death is imposed must not diminish the reliability of the sentencing phase of the proceeding, or the guilt phase upon which it is predicated); Booth v. Maryland, 482 U.S. ----, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) (a state statute that requires consideration of a victim impact statement at the sentencing phase of proceedings creates an unconstitutional risk of a death sentence based upon impermissible or irrelevant considerations); Ford v. Wainwright, 477 U.S. 399, ---, 106 S.Ct. 2595, 2610-11, 91 L.Ed.2d 335, 356-57 (1986) (Powell, J., concurring) ("heightened procedural requirements on capital trials and sentencing proceedings" do not apply in the context of post-sentencing proceedings). This "difference," significant as it is, is not a basis upon which we may begin implying a separate panoply of additional constitutional standards only applicable to collateral challenges in death penalty cases. See Strickland v. Washington, 466 U.S. 668, 686-87, 104 S.Ct. 2052, 2063-64, 80 L.Ed.2d 674 (1984) (in both capital and noncapital cases, the same principle governs claims as to effective assistance of counsel).
 
 
 26
 The Commonwealth of Virginia allows a sentence of death only in cases of aggravated murder. Va.Code Ann. Sec. 18.2-31 (1950, Repl.Vol.1982 & Supp.1987). Appeal is automatic from a sentence of death, Va.Code Ann. Sec. 17-110.1 A (1950 & Repl.Vol.1982), and procedural safeguards in excess of that required by the Constitution are provided, such as proportionality review of the sentence imposed in each case. Va.Code Ann. Sec. 17-110.1 C.2 (1950 & Repl.Vol.1982); compare Pulley v. Harris, 465 U.S. 37, 50-51, 104 S.Ct. 871, 879-80, 79 L.Ed.2d 29 (1984) ("There is thus no basis in our cases for holding that comparative proportionality review by an appellate court is required in every case in which the death penalty is imposed and the defendant requests it."). At trial and on the first appeal of right, the defendant is guaranteed the assistance of appointed counsel as required by the Constitution. The Constitution does not provide a right to counsel appointed at state expense in subsequent proceedings, Ross, 417 U.S. at 610-11, 94 S.Ct. at 2443-44; Finley, 481 U.S. at ---, 107 S.Ct. at 1992-93, 95 L.Ed.2d at 545, although a state may as a matter of legislative choice make counsel available to convicted defendants at all stages of judicial review. Ross, 417 U.S. at 618, 94 S.Ct. at 2447. It is significant that the issue of counsel arose in Finley solely because Finley sought to expand a state policy Pennsylvania has followed since 1967 which "imposes a mandatory requirement upon the trial court to appoint counsel for an indigent post conviction applicant." Commonwealth v. Mitchell, 427 Pa. 395, 235 A.2d 148, 149 (1967); see Finley, 481 U.S. at ---, 107 S.Ct. at 1995, 95 L.Ed.2d at 548. Similarly, Virginia courts may appoint counsel to assist in state post-conviction proceedings, Va.Code Ann. Sec. 14.1-183 (1950, Repl.Vol.1985 & Supp.1987), and are required to appoint counsel in cases involving nonfrivolous claims that require an evidentiary hearing. Darnell v. Peyton, 208 Va. 675, 160 S.E.2d 749 (1968). The Virginia procedure is similar to the procedure followed in the federal courts for review of state prisoner petitions under 28 U.S.C.A. Sec. 2254 (West 1977). Rules Governing Sec. 2254 Cases, Rule 8(a), (c).
 
 II.
 
 27
 The district court's per se exception to the standards of Bounds is grounded on three premises, none of which are supported by the evidence: emotional pressures on all inmates similarly situated, a degree of legal complexity unique to death penalty cases, and severe time constraints before execution of sentence.
 
 
 28
 As to the first premise, it is accepted that the thought of execution may exact considerable toll. But, the district court's conclusion that death row inmates are rendered incapable of initiating post-conviction petitions is not supported by the facts presented. For example, the record is irrefutable that Giarratano has initiated several successful pro se lawsuits during the past seven years.
 
 
 29
 The record additionally fails to establish that there is a unique legal complexity to death penalty cases. Though the facts and issues of criminal cases are of varying complexity, "the legal standards for constitutionally effective assistance of counsel are constant." Washington v. Watkins, 655 F.2d 1346, 1357 (5th Cir.1981), cert. denied, 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed. 474 (1982). Indeed the same argument of "complexity" could be advanced by other inmates to compel appointment of counsel in noncapital post-conviction murder cases to raise issues of burden shifting presumptions, or by federal inmates prosecuted under 18 U.S.C.A. Sec. 1963 (West 1984 & Supp.1987) (RICO) or 21 U.S.C.A. Sec. 848 (West 1981 & Supp.1987) (Continuing Criminal Enterprise). Further, other than the occasional reference to the "esoteric," "intricate" or "frequently sophisticated" nature of capital cases, the complexity addressed in this record refers to factual complexity and the need for factual "re-investigation." This obscures the fact that the standards of assessing the fairness of a capital prosecution are the same as those for other criminal cases, Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as well as the fact that the purpose of the right to counsel is not to provide a defendant with a private investigator. United States v. Gouveia, 467 U.S. 180, 191, 104 S.Ct. 2292, 2299, 81 L.Ed. 146 (1984). Plaintiffs' witnesses also described two cases purportedly demonstrating the need for complete factual re-investigation, but later conceded that in each instance the habeas corpus petition was actually based on information gained from the transcript of trial.
 
 
 30
 Finally, the evidence presented does not indicate that Virginia death row inmates are given a limited amount of time to prepare and present their petitions to the courts. Rather, the evidence establishes the contrary. The initiating Plaintiff of the class, Giarratano, has been on death row in Virginia for seven years. The record indicates that a substantial period of time passed between the affirmance of his conviction by the Virginia Supreme Court and the initiation of state or federal habeas corpus proceedings. The only other named Plaintiff to testify, Johnny Watkins, has now been on death row for over two years.
 
 
 31
 The record establishes that another inmate in the class, James Clark, has been on death row since 1979. Clark v. Commonwealth, 220 Va. 201, 257 S.E.2d 784 (1979), cert. denied, 444 U.S. 1049, 100 S.Ct. 741, 62 L.Ed.2d 736 (1980). His sentence was vacated on a state habeas corpus petition, based on an initial finding of ineffective assistance of counsel. This finding was reversed by the Supreme Court of Virginia in June, 1984 and the trial court was "directed to fix a date for Clark's execution." Virginia Dep't of Corrections v. Clark, 227 Va. 525, 318 S.E.2d 399, 406 (1984). Testimony of Clark's counsel has established that efforts on his behalf are ongoing.
 
 
 32
 This evidence is consistent with the histories of capital cases throughout the nation. U.S. Dep't of Justice, Bureau of Justice Statistics Bulletin, Capital Punishment, 1986 at 1, 8. It is not uncommon to find death penalty cases which have been in litigation for as much as "a full decade, with repetitive and careful reviews by both state and federal courts," as well as by the Supreme Court. Sullivan v. Wainwright, 464 U.S. 109, 112, 104 S.Ct. 450, 452, 78 L.Ed.2d 210 (1983) (application for stay of execution denied); Songer v. Wainwright, 469 U.S. 1133, 105 S.Ct. 817, 83 L.Ed.2d 809 (1985) (Brennan, J., dissenting from denial of petition for certiorari to review sentence of death imposed in 1974). The facts, other reliable data, and common experience all show significant delay rather than a "limited amount of time" in death penalty cases.
 
 III.
 
 33
 Under the district court's analysis Virginia death row inmates are to be automatically provided counsel upon request for preparing state habeas corpus petitions, but are explicitly denied this right for preparation of federal habeas petitions. We agree with the district court's conclusion that the Constitution does not require automatic appointment of counsel for the latter, but disagree with the reasoning. The district court based its distinction in treatment upon the fact that federal habeas proceedings are analogous to the situation in Ross in which a claim for appointed counsel to seek a writ of certiorari was rejected because of availability of appellate briefs, a transcript and state court opinions. Ross, 417 U.S. at 615, 94 S.Ct. at 2446. The distinction obscures the fact that inmates will also have appellate briefs, a transcript, and state court opinions in mounting a challenge to their conviction in state court. They will also be pursuing claims under liberal pleading and amendment rules that are essentially the same as those followed in the federal courts, and will in fact be provided counsel under essentially the same standard in both the state and federal courts of Virginia.
 
 IV.
 
 34
 In testimony there was reference to an agency created by the State of Florida to handle post-conviction capital cases in that state. The district court apparently concluded that this would be a good idea for the Commonwealth of Virginia, and has effectively ordered it to create such an agency. While it may be a good idea and the Commonwealth of Virginia and other states may elect to adopt this procedure, we have no authority to order it.
 
 
 35
 The district court imposed on the Commonwealth of Virginia a duty that is more attuned to personal notions of fairness than to constitutional requirements. It is one with which we have no personal disagreement. But, in the words of Justice Potter Stewart:
 
 
 36
 I am moved to repeat the substance of what I had to say on another occasion about the recidivist legislation of Texas:
 
 
 37
 'If the Constitution gave me a roving commission to impose upon the criminal courts of Texas my own notions of enlightened policy, I would not join the Court's opinion. For it is clear to me that the recidivist procedures adopted in recent years by many other States ... are far superior to those utilized [here]. But the question for decision is not whether we applaud or even whether we personally approve the procedures followed in [this case]. The question is whether those procedures fall below the minimum level the [Constitution] will tolerate. Upon that question I am constrained to join the opinion and judgment of the Court.' Spencer v. Texas, 385 U.S. 554, 569, 87 S.Ct. 648, 656, 17 L.Ed.2d 606 (concurring opinion).
 
 
 38
 Rummel v. Estelle, 445 U.S. 263, 285, 100 S.Ct. 1133, 1145, 63 L.Ed.2d 382 (1980) (Stewart, J., concurring).
 
 
 39
 The district court's order requiring automatic appointment of counsel upon request for assisting in preparing state habeas corpus petitions is reversed. Its order denying appointment for the preparation of federal habeas corpus petitions is affirmed.
 
 
 40
 AFFIRMED IN PART; REVERSED IN PART.
 
 
 41
 K.K. HALL, Circuit Judge, concurring in part and dissenting in part:
 
 
 42
 Although my reasoning differs somewhat from that of the majority, I agree that the district court properly held that the state is not required to provide counsel for preparation of federal habeas petitions.[1] I cannot agree, however, with the majority's conclusion that Virginia provides for meaningful access to the courts for death row inmates in state habeas proceedings.
 
 I.
 
 43
 Virginia currently provides three forms of legal assistance to death row inmates pursuing post-conviction claims--law libraries, unit attorneys, and appointed attorneys. Death row inmates are housed at Mecklenburg Correctional Center, the Virginia State Penitentiary and the Powhatan Correctional Center. Each of these three centers maintain law libraries. Mecklenburg death row inmates are permitted two half-day periods weekly; death row inmates at Powhatan and the Penitentiary are not permitted to visit the libraries, but may borrow materials for use in their cells.
 
 
 44
 Unit attorneys are assigned to the various penal institutions to assist inmates in any matter related to incarceration. In addition to these unit attorneys, Virginia provides for the appointment of counsel, under certain circumstances, to indigent inmates who have been residents of Virginia for six months. Va.Code Sec. 14.1-183. Under this provision the courts in Virginia have the discretion to appoint counsel to represent inmates proceeding in forma pauperis. Death row inmates in Virginia, seeking collateral relief from their sentence through state post-conviction remedies, have traditionally had no automatic right to the assistance of counsel.
 
 
 45
 The district court found, based upon evidence presented at the trial, that the death row inmates were incapable of effectively using law books to raise their post-conviction claims. Three considerations led the district court to this conclusion:
 
 
 46
 (1) the limited amount of time death row inmates had to prepare and present their petitions to the courts;
 
 
 47
 (2) the complexity and difficulty of the legal work; and
 
 
 48
 (3) the emotional instability of inmates preparing themselves for impending death.
 
 
 49
 The district court consequently found that the provision of a library did little to satisfy Virginia's constitutional obligation to assist death row inmates in the preparation and filing of meaningful legal papers as required by Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The district court then turned to the examination of the assistance presently provided by Virginia to determine if it met the constitutional requirement.
 
 
 50
 The district court also concluded that the assistance provided by unit attorneys was inadequate both in fact and in law. Evidence produced at trial indicated that seven institutional attorneys were attempting to meet the needs of over 2,000 prisoners and that each attorney could not adequately handle more than one capital case at a time. In addition, the unit attorneys were not hired to work full time. The district court also noted that even if Virginia appointed unit attorneys to service only the death row inmates, its duty under Bounds would not be fulfilled because the scope of assistance was too limited.[2] The district court concluded that only the continuous services of an attorney to investigate, research, and present claimed violations of fundamental rights could provide death row inmates the meaningful access to the courts guaranteed by the Constitution and that the assistance of unit attorneys fell short of this requirement.
 
 
 51
 Finally, the district court determined that legal assistance provided by appointed attorneys was fatally flawed with respect to the requirements of Bounds based on the timing of the appointment. Appointments are made under Va.Code Sec. 14.1-183 only after a petition is filed and then only if a nonfrivolous claim is raised. Thus, the district court reasoned, the inmate would not receive the attorney's assistance in the critical stages of developing his claims.[3] The district court concluded that in view of the inadequacy of the assistance provided by Virginia and the scarcity of competent and willing counsel to assist indigent death row inmates seeking post-conviction remedies, relief[4] was necessary and warranted. In order to provide effective relief, the district court held that Virginia must provide death row inmates trained legal assistance in their state post-conviction proceedings.
 
 II.
 
 52
 I am persuaded by the reasoning of the district court in its well-thought out opinion that legal assistance presently available to Virginia death row inmates in state post-conviction proceedings fails to meet the constitutional requirement of meaningful access to the courts as set forth in Bounds. It is now established beyond a doubt that prisoners have a constitutional right of access to the courts. The district court evaluated the existing Virginia program "as a whole to ascertain its compliance with constitutional right of access to the courts." Bounds, 430 U.S. at 821, 97 S.Ct. at 1494. The district court made findings of fact based upon the record which indicated that Virginia was not in compliance with constitutional standards. Under Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), I cannot say these findings of fact are clearly erroneous. Nor do I find that the district court abused its discretion in formulating the remedy in this case. Milliken v. Bradley, (Milliken II ), 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977).
 
 
 53
 The majority's reliance on Pennsylvania v. Finley, 481 U.S. ----, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), as authority for their holding that state prisoners are not constitutionally entitled to state-supplied attorneys in post-conviction proceedings is misplaced. In Finley, the Supreme Court held that the procedural framework of Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), does not apply to the situation in which counsel appointed pursuant to Pennsylvania state law later seeks to withdraw from the representation without first filing a brief. The Court stated that because Pennsylvania was not constitutionally required to provide counsel in post-conviction proceedings, then due process did not require that the counsel's actions comport with the Anders procedures.[5] However, Finley was not a meaningful access case, nor did it address the rule enunciated in Bounds. Most significantly, Finley did not involve the death penalty.
 
 
 54
 Both society and affected individuals have a compelling interest in insuring that death sentences have been constitutionally imposed. Moreover, the complexity and difficulty of the legal work involved in challenging a death penalty require particular safeguards in order to insure meaningful access. The Supreme Court has stated that "there is a significant constitutional difference between the death penalty and lesser punishments." Beck v. Alabama, 447 U.S. 625, 637, 100 S.Ct. 2382, 2389-90, 65 L.Ed.2d 392 (1980). In addition, the Supreme Court recently held that matters affecting an already condemned prisoner call for "no less stringent standards than those demanded in any other aspect of a capital proceeding." Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 2603, 91 L.Ed.2d 335 (1986). See also, Booth v. Maryland, 482 U.S. ----, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) ("death is a punishment different from all other sanctions.")[6] I do not, therefore, read Finley as suggesting that counsel cannot be required under the unique circumstances of post-conviction proceedings involving a challenge to the death penalty.
 
 
 55
 The majority dismisses the district court findings that there are special legal complexities in death penalty cases and that Virginia inmates are given a limited amount of time to prepare and present their petitions to the courts by pointing to the example of Giarratano who has been on death row for seven years. Surely, the majority cannot suggest that Giarratano is typical of Virginia death row inmates. Giarratano has risen to the level of a "jailhouse lawyer" and has been instrumental in helping other inmate with their post-conviction proceedings. The reason Giarratano has been on death row for seven years is not due to any efforts by the State of Virginia but rather through his own actions. It is clear from the record that Virginia has abrogated its duty to provide meaningful access by depending upon Giarratano and Marie Deans[7] to provide the legal assistance required by Bounds to death row inmates.
 
 
 56
 It is true that two other inmates have been on death row for several years. The fact remains, however, that a death sentence may be imposed within 30 days after conviction and as the record indicated, one inmate, Earl Washington, was fourteen days away from execution when an attorney was provided to him through the efforts of Ms. Deans and Giarratano. It is reasonable to believe that if they had not found an attorney, the inmate would have been executed on the date originally set.
 
 
 57
 Therefore, for all the above reasons, I would affirm the district court and must respectfully dissent from the majority.
 
 
 
 [1]
 In Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), the Supreme Court rejected a claim that states must appoint counsel for indigents seeking a writ of certiorari. The Court also observed that in considering a writ of certiorari it would have available appellate briefs, a transcript and state court opinions. Similarly, a federal court considering a petition for habeas corpus would also have briefs of counsel, a transcript and opinions because of the exhaustion of remedies requirement
 Virginia provides for a mandatory appeal for capital convictions and death sentences and counsel is provided for this appeal. The death row inmates would have available the appellate briefs, transcripts and state court opinions to use in their writs of certiorari. If the inmates are provided with court-appointed attorneys in their state post-conviction proceedings, they will have briefs, transcripts and opinions to use in their federal habeas corpus proceedings. I conclude that the provision of assistance of attorneys at these points insure that the inmates are provided with meaningful access to the federal courts in their federal post-conviction proceedings. If the inmates are provided with counsel in their state habeas proceedings, all this information and materials will be available in the federal proceedings and the requirements of Bounds will have been satisfied.
 
 
 [2]
 The evidence indicated that the unit attorneys do not perform factual inquiries, do not sign pleadings, or make court appearances. Instead, they act only as legal advisors
 
 
 [3]
 This assistance is particularly critical in Virginia where all claims, the facts of which are known at the time of filing, must be included in that petition as they may not be raised successfully in a subsequent filing and those claims also could not be considered in federal court because federal courts generally may not consider claims barred by Virginia procedural rules. Whitley v. Bair, 802 F.2d 1487 (4th Cir.1986), and Smith v. Murray, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed. 434 (1986)
 
 
 [4]
 The district court found that in the past Virginia had no need to provide counsel to death row inmates pursuing post-conviction relief because attorneys volunteered their services or were recruited to provide pro bono assistance to death row prisoners. However, the evidence presented at trial established that few attorneys are now willing to voluntarily represent death row inmates in post-conviction efforts
 
 
 [5]
 The Anders procedures require counsel to perform a conscientious evaluation of the record, to write a brief referring to arguable support in the record and to give notice to the client
 
 
 [6]
 Because of the peculiar nature of the death penalty, I find it difficult to envision any situation in which appointed counsel would not be required in state post-conviction proceedings when a prisoner under the sentence of death could not afford an attorney. The circumstances noted by the district court that prevents a death row inmate from proceeding effectively without counsel in Virginia are not conditions limited to that state
 
 
 [7]
 Ms. Deans is the Executive Director of the Virginia Coalition on Jails and Prisons. Ms. Deans, since 1983, has recruited attorneys to represent inmates. The Coalition is not a state agency