# Richmond.

## Barnes v. Commonwealth.

### December 12, 1895.

1. Records—*Amendments During the Term and After.*—During the term of a court at which a judicial act is done the record remains in the breast of the court, and may be altered or amended; but after the adjournment of the term amendments can only be made in cases in which there is something in the record by which they can be safely made. Amendments cannot be made after the term, upon the individual recollection of the judge, or upon proofs *aliunde.*

2. Appellate Court—*Objection Not Made in Trial Court—Jurors.*—An objection that jurors summoned in a criminal case were not free from exception cannot be made in the appellate court, where it does not appear that the objection was made in the trial court, or that the accused was injured thereby. Acts 1893–'4, chapter 43.

3. Criminal Procedure—*Joint Indictment—Separate Trial—Presumption When Record Silent.*—Persons jointly indicted cannot be tried jointly without the concurrent election of themselves and the attorney for the Commonwealth. Either has the right to demand a separate trial. But even if it were otherwise and the record is silent on the subject of election, the appellate court will not presume that any right has been denied the accused.

4. Appellate Court—*Record of Trial Court—Failure to Disclose Error.*—The Court of Appeals can only consider a case, on writ of error or appeal, on the record as made in the trial court. If this fails to disclose the errors complained of, they cannot be considered.

5. Criminal Law—*Right to Have Counsel—Silence of Record—Presumption.*—Every person accused of crime has a right to have counsel to aid him in his defence, but no one is compelled to employ counsel. If the record fails to show whether the accused had counsel or not, or even if it shows that he did not have counsel, it is not ground for reversal, unless it further appears that the right to have counsel was denied. It is not to be presumed that the right was denied.

Opinion.

6. CRIMINAL LAW—*Custody of the Jury—What Record Must Show.*—In a prosecution for a felony, where the punishment may be death or confinement in the penitentiary for more than ten years, the jury must be kept in the custody of the sheriff or other proper officer when not in the presence of the court, and that they were so kept must affirmatively appear from the record, or the verdict and judgment will be set aside.

Error to a judgment of the Circuit Court of Lunenburg county, rendered September 12, 1895, refusing a writ of error to a judgment of the County Court of said county rendered July 20, 1895, whereby the plaintiff in error was sentenced to be hanged.

*Reversed.*

There was no bill of exception in the case, but the record shows that a motion for a new trial was made and overruled.

The opinion states the case.

*George D. Wise, H. W. Flournoy,* and *A. B. Guigon,* for the plaintiff in error.

*Attorney-General R. Taylor Scott, William H. Mann,* and *R. G. Southall,* for the Commonwealth.

BUCHANAN, J., delivered the opinion of the court.

The first question to be disposed of is the motion of the Attorney-General and his associate in behalf of the Commonwealth to have the decision of this case upon the merits postponed until the County Court shall have amended the record of this case in that court, so as to make it show :

1st. That sixteen jurors free from exception were selected for the trial of the accused.

2d. That at every adjournment of the court the jury trying

the case at bar were put in the custody of the sheriff, who was duly sworn as required by law, and that they were each morning returned into court in the custody of the sheriff, according to the order of adjournment.

3d. That whenever the jurors went to their room to consider of their verdict they were put in the custody of the sheriff, who carried them to their room, and returned them in his custody into court.

4th. That before delivering their verdict the jurors were polled as required by law.

The amendments which the Attorney-General desires to have made in the record, it is claimed, are based on the personal knowledge of the judge, and the records of the court as they now stand, and that all the orders which it is sought to have entered to amend the record in the particulars named were made during the trial of the case, and that the clerk was then directed to enter them on the order-books of the court, but by mistake failed to do so.

The rule at common law is that during the term wherein any *judicial* act is done the record remains in the breast of the judges of the court and in their remembrance, and therefore the roll is alterable during the term as the judges shall direct; but when the term is past, then the record is in the roll, and admits of no alteration, averment, or proof to the contrary. 3 Thos. Coke Lit. 323, as quoted in 1 Rob. Pr. (old ed.) 638; *Bunting* v. *Willis*, 27 Gratt., at page 158–9; *Winston* v. *Giles*, Id., at page 534; *Cawood's Case*, 2 Va. Cases 527, 545.

It has been correctly observed that the judge, during the term, is a living record, and therefore during that period of time he may alter and supply from his own memory any order, judgment, or decree which has been pronounced, and this because, having made them himself, he is presumed to re-

tain them in his recollection.   But at common law, after the term has elapsed, the judge has no such power, because it is supposed there will be a period at which a judge will cease to retain in his memory the things which have been ordered and adjudged, and that period, it is well conceived, may be the end of the term, as he will then be apt to dismiss from his thoughts the things which have been previously passing in them.   It is indeed a very delicate power, and might be subject to much abuse, especially in criminal cases, if the extent to which it might be carried was not well defined and properly checked by law.   Note to 1 Arch. Cr. Pl. & Pr., p. 592 (Pomeroy's 8th ed.)

At an early day in this State statutes were enacted for the purpose of compelling the courts to keep their records accurately, and to provide how records in certain cases might be amended.   The statute now in force upon the subject of keeping such records provides that

"The proceedings of every court shall be entered in a book, and read in open court by the clerk thereof.   The proceedings of each day shall be drawn up at large, and read during that term, except those of the last day of the term, which shall be drawn up and read the same day.   After being corrected, where it is necessary, the records shall be signed by the presiding judge."   (Sec. 3114, Code of 1887.)

This statute, and those which preceded it upon the same subject, were intended to provide for keeping the records of the proceedings of every court correctly, by making it the duty of the clerk to enter them in a book, and to read them in open court to the judge, and in the presence of the bar, so that any errors in or omissions from them might be corrected.

Recognizing the fact, however, that, notwithstanding these wise and salutary provisions, errors and omissions might still occur, other statutes were enacted which authorized the courts, after the end of the term, to make amendments and corrections in certain cases.   Section 3451 of the present Code, among other things, provides that

"The court in which is rendered a judgment or decree in a cause wherein there is in a declaration or pleading, or in the record of the judgment or decree, any mistake, miscalculation, or misrecital of any name, sum, quantity, or time, when the same is right in any part of the record or proceedings, or where there is any verdict, report of a commissioner, bond, or other writing, whereby such judgment or decree may be safely amended, * * * may amend such judgment or decree according to the truth and justice of the case."

These are the regulations established by the Legislature for keeping and amending judicial records, and the few cases which we have in our reports upon the subject show how effective they have been in preventing litigation; and the slight changes that have been made in them during the long period they have been in force show how successfully they have accomplished the purposes for which they were enacted.

In *Cawood's Case*, reported in 2 Va. Cases 527, decided by the General Court in 1826, six questions were adjourned by the Superior Court of Wythe county to the General Court, on account of their novelty and difficulty, for its opinion. Among them were the following :

1st. "What is the legal effect of an omission, on the part of the clerk of the Circuit Court of Washington county, to enter on the order-book that the grand jury, at the last April term of that court, had found an indictment against Benjamin Cawood and others, 'A true bill'?"

2d. "Can such an omission be supplied by resorting to the paper purporting to be an indictment, copied into the record by the clerk, and the endorsement thereon, purporting to have been made by the grand jury, finding it to be a true bill?"

The case was very fully and ably argued. In answer to the first question the court held that it was necessary to record the finding of the grand jury in order to perfect the indictment.

In answer to the second question, and the one which is important in considering the case at bar, the General Court

said, at page 545 : " The next question is, whether the omission of the grand jury can now be supplied, and whether the record can be amended in this particular. A view of the decisions of this country and in England, and referred to by the counsel, leads us to the conclusion that during the term the records are in the breast of the court, and that amendments may be made in the proceedings of the court; but that, after the term has passed, no amendment can be made, except mere *clerical misprisions ;* that this is not a misprision of that kind ; that the term having passed, there is nothing to amend by, except the memory of the judge, of the clerk, of the grand jurors, and others, and that it cannot be amended."

In the case of *Burch* v. *White,* 3 Rand. 104, at the next term after the judgment was entered an order was made stating that at the previous term of the court an appeal had been allowed from the judgment, but that the clerk had omitted to enter it, and therefore the appeal was allowed *nunc pro tunc.* This court said whether an appeal would lie from a judgment was a question of law, to be decided by the court, and the only evidence of what the court had done was the record. It was not a case in which there was anything in the record to amend by; for though an appeal bond had been filed in the office, that furnished no proof that the bond had been received by the court, or that an appeal had been allowed.

In *Powell's Case,* 11 Gratt. 822, the accused was indicted for forgery, tried, and convicted. After the expiration of the term at which he was convicted, he applied to the judge of the Circuit Court, in vacation, to amend the record, and the judge made an order directing that the record should be amended so as to show that, upon the arraignment of the prisoner for the offence of which he was convicted, he moved the court, through his counsel, to quash the indictment, and each count thereof; that this motion was overruled, but was omitted to be entered upon the record.

Judge Lee, in delivering the unanimous opinion of the court, said : " Waiving the question whether the provision in the Code (ch. 181, sec. 5, p. 681), authorizing amendments in judgments or decrees of a court in certain cases by the judge in vacation, after the adjournment of the term, can apply to a case of felony, in which all the proceedings should regularly be had in presence of the accused, or to any criminal case, I am yet of opinion that no such amendment of the record as that attempted to be made in this case by the action of the judge, in vacation, on the 11th of May, 1854, is within the scope of that provision. It was intended to authorize amendments in support of a judgment in cases in which there was something in the record by which they could safely be made. It could not have been intended to authorize an amendment to be made upon the individual recollection of the judge, or upon proofs *aliunde*. Nor was the application in this case to amend the judgment, nor was it designed to aid the judgment, when made. It was an application to introduce something into the record, as part thereof, not before found therein, depending on the recollection of the judge, or upon proofs to be submitted to him, and its object was to provide a means of reversing the judgment, not of sustaining it.

" The construction given by the English courts to the statutes of amendment required that there should be something to amend by. Tidd's Prac. 246, 247; *Commonwealth* v. *Winstons*, 5 Rand. 546, opinion of Judge Green. And such is, I think, the plain meaning of the provision in question in our statute. And if no amendment can be made in the record of a judgment after the term, except under the statute, or in the few cases allowed by the common law, of which this is not one, the amendment attempted to be made in this case must be disregarded."

Whether the authority of the courts in this State to amend

its records after the term at which a final judgment has been entered be derived solely from our statute, or from both the common law and the statute, it is clear that under our statutes, decisions, and practice, whatever may be the rule in other jurisdictions, they can only make amendments in cases in which there is something in the record by which they can be safely made, and that amendments cannot be made upon the individual recollection of the judge, or upon proofs *aliunde*.

There is nothing in the record in this case, as certified by the clerk of the County Court, by which the court of that county could amend it in any of the particulars in which it is sought to have it amended, and, if the court attempted to amend it, it would be upon the judge's own personal recollection, or upon proofs *aliunde*. This, we have seen, cannot be done.

The motion of the Attorney-General to postpone the case until such amendments can be made must therefore be overruled, and the case disposed of on the record as it is.

It is assigned as error that the jury which tried the accused was not selected in the manner provided by law, in this, that section 4023 of the Code requires that a panel of sixteen persons free from exception shall be selected, from which the accused may strike four, and the remaining twelve shall constitute the jury for his trial, whilst the record shows that sixteen persons were selected, but fails to show that they were free from exception.

Section 3156 of the Code, as amended by an act approved February 27, 1894, (Acts of Assembly 1893–4, ch. 43, p. 494,) provides that

" No irregularity in any writ of *venire facias*, or in the drawing, summoning, returning, or empanelling of jurors, shall be sufficient to set aside a verdict, unless the party making the objection was injured by the irregularity, or unless the objection was made before the swearing of the jury."

Opinion.

No objection was made in the trial court at any time to this irregularity, nor does it appear that the accused was injured by it. This assignment of error cannot be sustained.

The accused was indicted jointly with two other persons, but tried separately. The record does not show upon whose motion she was tried, and this is assigned as error. Each and every person indicted jointly for a felony may elect, as a matter of right, to be tried separately, under section 4029 of the Code, and the attorney for the Commonwealth has the right to try them separately, subject to the control of the court; but persons jointly indicted cannot be tried jointly without the concurrent election of themselves, on the one hand, and the attorney for the Commonwealth or the court, on the other. But if it were true that the accused had the right to be tried separately or jointly at her election, there is nothing in the record to show that she made her election to be tried jointly, and the right (if she had such right) was denied her. Such fact not appearing in the record by bill of exception, or in any other manner, cannot be presumed to have existed. *Curran's Case*, 7 Gratt. 619, 626–7; *Lewis and Denny's Case*, 25 Gratt. 938.

The accused insists that the trial court erred in not removing her case to another county for trial, and that its instructions to the jury were erroneous.

There is nothing in the record to show that she was entitled to a change of *venue*, or that a motion was made for that purpose; neither does the record show that the court gave any instructions to the jury.

This court considers and can only consider a case brought here by a writ of error or appeal upon the record of the case as made in the court below. If the record fails to show the errors of which they complain, no relief can be had in this court, however erroneous the action of the trial court may have been.

It is also assigned as error by the accused that she was tried and convicted without the assistance of counsel in making her defence.

The record does not show whether she had counsel or not; but if it showed that she did not have counsel, unless it appeared that she was denied that right, it would not be ground for reversing the judgment. Every person accused of crime has a right to have counsel to aid him in making his defence, but no one is compelled to have counsel. If a person accused of crime is able to employ counsel, but declines to do so, and goes to trial without counsel, and is convicted, that is no ground for reversing the judgment.

If a prisoner is unable to employ counsel, the court may appoint some one to defend him, and it is a duty which counsel owes to his profession, to the court engaged in the trial, to the administration of justice, and to humanity, not to withhold his aid, nor spare his best efforts in the defence of one " who has the double misfortune to be stricken with poverty and accused of crime. No one is at liberty to decline such an appointment, and few, it is to be hoped, would be disposed to do so." Cooley's Const. Lim. 406. But we cannot presume that the trial court denied the prisoner her right to have counsel, or failed, if she were unable to employ counsel, to assign some one to aid her in her defence.

It is also assigned as error that the jury who tried the accused were not, when the court adjourned from day to day during the trial, committed to the custody of the sheriff, with instructions from the court not to speak to them himself, nor to suffer any other person to speak to them, touching the trial.

In a prosecution for a felony in this State, where the punishment may be death or confinement in the penitentiary for more than ten years, the jury must be kept in the custody of the sheriff or other proper officer, when not in the presence

of the court, and their separation out of his custody and control is *prima facie* sufficient to vitiate the verdict. *Phillips's Case*, 19 Gratt. 485, 540, and cases there cited.

To sustain this assignment of error, the accused relies upon the orders of the court in the cause, among which are the following:

"At a County Court continued and held in and for the said county, at the court-house thereof, on Tuesday, the 18th day of July, 1895, Pokey Barnes, who stands indicted for murder, was again led to the bar in custody of the sheriff of this court, and the jury sworn on Tuesday to try this case appeared in court according to their adjournment on yesterday, and, having partly heard the evidence, were again adjourned till to-morrow morning at 9 o'clock, and the prisoner is remanded to jail."

"At a County Court continued and held in and for said county, at the court-house thereof, on Friday, the 19th day of July, 1895, Pokey Barnes, who stands indicted for murder, was again led to the bar in custody of the sheriff of this court, and the jury sworn on Tuesday last to try this case appeared in court in accordance with their adjournment on yesterday, and, after partly hearing the evidence, were again adjourned till to-morrow morning at 9 o'clock, and the prisoner is remanded to jail."

The question raised by this assignment of error is one which, so far as we can ascertain, has never been decided by this court. In *Bennett's Case*, 8 Leigh 745, the record showed that on each day the jurors were committed to the custody of the sheriff, who was directed to attend and keep them together in one of the jury rooms, without communication with any other person, and to cause them to appear in court the next day; but it did not show that the sheriff was

sworn to perform that duty.   The majority of the court held
in that case that it was *ex officio* the duty of the sheriff to
keep the jury, and that it was not indispensably necessary
that he should be sworn, though it was generally done out of
abundant caution.

The form of a record of the proceedings in court in a fel-
ony case at common law is given by Chitty in his work on
Criminal Law, at page 720, and it is also given in the appen-
dix to Vol. II. of Chitty's Blackstone.   Some of the proceed-
ings which are noticed in that form are no longer required,
whilst others not contained therein are now made essential.

It will be observed, in the form given by Chitty, that there
is no notice taken of the jury during the progress of the trial.
The reason, no doubt, was that after the jury were sworn the
court proceeded with the trial without adjournment until it
was ended.

In the case of *King* v. *Stone*, reported in 6 Term Rep.
527–31, it is stated that " the court having set on the first
day of the trial from nine o'clock in the morning till ten
o'clock at night, without any interruption or refreshment, and
the Attorney-General stating that his evidence would occupy
four. hours more, and some of the jury being very much
exhausted, and incapable, as they declared, of keeping up
their attention much longer, the court adjourned until nine
o'clock the next morning."   Lord Kenyon observing that
necessity justified what it compelled, and that though it was
left to modern times to bring forward cases of such extra-
ordinary length, yet no rule could compel the court to con-
tinue longer sitting than their natural powers would enable
them to do the business of it.   He allowed the jury to retire
and entered the following order :

" Forasmuch as it appears to the court here, from the length
of time which has been already occupied by the trial of the
issue joined upon the indictment, and the further time which

will be necessarily occupied by the same, that justice cannot be done if this court proceed without intermission upon said trial, it is 'ordered that the jury empanelled and sworn to try the said issue have leave to withdraw from the bar of this court, being well and truly kept by six bailiffs, duly sworn not to permit any person to speak to them touching any matter relative to the trial of this issue; and that the same jury shall again come to the bar of this court on to-morrow at nine o'clock in the forenoon."

Since that time this seems to have been the practice in England, and it has been the practice in this State from an early day.

Mr. Robinson, in his Old Practice, Vol. III., p. 246, published in 1839, says:

"When the jury in a case of felony cannot fully hear the evidence and the arguments of counsel on the day that they are empanelled, the practice in Virginia is to commit them to the custody of the sheriff, or other officer, who is directed to keep them together, without communication with any other person, and to cause them to appear before the court at the hour to which it adjourns. At the time of so committing the jury to the custody of the officer, it is usual to administer an oath to the officer, to the following effect: ' You shall well and truly, to the best of your ability, keep this jury, and neither speak to them yourself, nor suffer any other person to speak to them, touching any matter relative to this trial, until they return into court.' " The record in *Kennedy's Case*, 2 Va. Cases 510, decided in 1826, and in *Mendum's Case*, 6 Rand. 704, as is stated in *Bennett's Case*, 8 Leigh 745, decided in 1837, showed this to be the practice, except that the record in those cases failed to show that the sheriff in whose custody the jury were placed was sworn.

We have examined records in capital cases of recent date, now on file in the clerk's office of this court, and find that

they show that the jury at each adjournment of the court was placed in the custody of the sheriff or other proper officer, with instructions not to speak to them himself, nor to allow any one else to speak to them, touching the trial. We think this may therefore be regarded as the settled practice in this State.

This practice is based upon that principle of the common law that the accused in every felony case was not only entitled to a jury free from exception when empanelled to try his case, but that he had the right to have them remain so until their verdict was rendered, by keeping them free, as far as possible, from all extraneous influences.

We think it may be safely said that any practice so salutary and wise, and so admirably calculated to protect and insure the rights and interests of both the accused and the Commonwealth in felony cases, and which has been uniformly pursued for a great length of time, ought to be regarded as showing what the law is on the subject.

We are of opinion, therefore, that where the record in a capital case shows that the jury were adjourned from one day to another, it ought also to show that upon such adjournment they were committed to the custody of the proper officer, with instructions not to speak to them himself, nor to allow any one else to speak to them, touching the trial of the case in which they are engaged.

As the record in this case fails to show this, the judgment of the trial court must be reversed, the verdict set aside, and a new trial awarded.

*Reversed.*

RIELY, J., dissenting.

I concur in all of the opinion except that part which holds that where, upon the trial of a capital case, the jury are adjourned from one day to another, the record should show that the jury, upon such adjournment, were placed in the custody

Dissenting Opinion.

of the proper officer, with instructions not to speak to them himself, nor to allow any one else to speak them, touching the trial of the case.  From that I am constrained to dissent.  It is a proper and well-established practice that the jury, upon an adjournment, should be placed in the custody of the proper officer, and kept together, free from all extraneous influences; but it is not a necessary part of the record to sustain the judgment.  It is, in my opinion, not one of the essentials of the record which should affirmatively appear, but is one of the incidents of the trial, that this court should presume was regular, unless the contrary appears.  It should be presumed that the court, in the conduct of the trial, proceeded orderly and in the usual way, unless the contrary appears by the record, or was made so to appear by some appropriate proceeding.

BUCHANAN, J.:

In the cases of *Mary Abernathy* v. *Commonwealth* and *Solomon Marable* v. *Commonwealth* the judgments will be reversed, the verdicts set aside, and new trials awarded in each case, for the reasons given in the case of *Pokey Barnes* v. *The Commonwealth*.

*Reversed.*

RIELY, J., dissenting.

In addition to what I have said in the case of Pokey Barnes, I desire to add that in this case the order of the trial court recites that "the jury sworn on yesterday to try this case appeared in court, according to their adjournment, *in custody of the sheriff of this court.*"  I think that it is a fair and reasonable presumption, from this, that the jury were duly placed by the court, at the adjournment on the evening before, in the custody of the sheriff.  How else would they, or could they, be the next morning in his custody?