847 F.2d 1118
 57 USLW 2011
 Joseph M. GIARRATANO; Johnny Watkins, Jr.; Richard T.
Boggs, Plaintiffs- Appellees,
v.
Edward W. MURRAY, Director, Virginia Department of
Corrections; Gerald L. Baliles, Governor; Robert
N. Baldwin; Michael Samberg, Warden, in
their official capacities,
Defendants-Appellants,
American Bar Association, Amicus Curiae.
 Nos. 87-7518, 87-7519.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 6, 1988.
Decided June 3, 1988.
Rehearing and Rehearing In Banc Denied Jan. 22, 1990.
 
 Robert Q. Harris, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., Richard F. Gorman, III, Asst. Atty. Gen., Guy W. Horsley, Jr., Sr. Asst. Atty. Gen., Richmond, Va., on brief), for defendants-appellants.
 Steven E. Landers (Jay Topkis, Alisa D. Shudofsky, Clyde Allison, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Gerald T. Zerkin, Zerkin, Heard & Kozak, Richmond, Va., Martha A. Geer, Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N.C., Jonathan D. Sasser, Moore & Van Allen, Durham, N.C., on brief), for plaintiffs-appellees.
 (Eugene C. Thomas, Boise, Idaho, Ronald J. Tabak, New York City, Sara-Ann Determan, Charles G. Cole, American Bar Association, Washington, D.C., on brief), for amicus curiae.
 Before WINTER, Chief Judge, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, ERVIN, CHAPMAN, WILKINSON, and WILKINS, Circuit Judges.
 K.K. HALL, Circuit Judge:
 
 
 1
 This is a consolidated appeal and cross-appeal arising from a class action initiated by death row inmates in the State of Virginia pursuant to 42 U.S.C. Sec. 1983. The State appeals an order of the district court requiring the appointment of counsel for inmates challenging their death penalty through state habeas proceedings. The inmate class cross-appeals the district court's refusal to order the appointment of counsel in federal post-conviction proceedings. By a majority vote, a panel of this Court reversed that portion of the judgment of the district court, 668 F.Supp. 511, requiring appointment of counsel for death row inmates in state proceedings. Giarratano, et al. v. Murray, et al., 836 F.2d 1421 (4th Cir.1988). Thereafter, a majority of the Court voted to reconsider the case en banc. A majority of the en banc Court has now voted to affirm the judgment of the district court for the reasons set forth below.
 
 I.
 
 2
 Virginia currently provides three forms of legal assistance to death row inmates pursuing post-conviction claims--law libraries, unit attorneys, and appointed attorneys. Death row inmates are housed at Mecklenberg Correctional Center, the Virginia State Penitentiary and the Powhatan Correctional Center. Each of these three centers maintain law libraries. Mecklenberg death row inmates are permitted two half-day periods weekly; death row inmates at Powhatan and the Penitentiary are not permitted to visit the libraries, but may borrow materials for use in their cells.
 
 
 3
 Unit attorneys are assigned to the various penal institutions to assist inmates in any matter related to incarceration. In addition to these unit attorneys, Virginia provides for the appointment of counsel, under certain circumstances, to indigent inmates who have been residents of Virginia for six months.[1] Va.Code Sec. 14.1-183 (1950). Under this provision the courts in Virginia have the discretion to appoint counsel to represent inmates proceeding in forma pauperis. Death row inmates in Virginia, seeking collateral relief from their sentences through state post-conviction remedies, have traditionally had no automatic right to the assistance of counsel.
 
 
 4
 This action was originally brought by Joseph M. Giarratano, a Virginia death row inmate, who sought declaratory and injunctive relief with respect to post-conviction assistance of counsel. The district court permitted other death row inmates to intervene in the suit and granted their motion for class certification. The class consists of:
 
 
 5
 all persons, now and in the future, sentenced to death in Virginia, whose sentences have been or are subsequently affirmed by the Virginia Supreme Court and who either (1) cannot afford to retain and do not have attorneys to represent them in connection with their post-conviction proceedings, or (2) could not afford to retain and did not have attorneys to represent them in connection with a particular post-conviction proceeding.
 
 
 6
 The death row inmates had presented a number of constitutional grounds in support of their claim of right to post-conviction assistance of counsel.[2] However, the district court granted relief only on the basis of the right of access to the courts as stated in Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). In Bounds, the Supreme Court held that prison authorities are required to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or assistance from legally trained personnel.
 
 
 7
 The district court found, based upon evidence presented at the trial, that the death row inmates were incapable of effectively using law books to raise their post-conviction claims. Three considerations led the district court to this conclusion:
 
 
 8
 (1) the limited amount of time death row inmates had to prepare and present their petitions to the courts;
 
 
 9
 (2) the complexity and difficulty of the legal work; and
 
 
 10
 (3) the emotional instability of inmates preparing themselves for impending death.
 
 
 11
 The district court consequently found that the provision of a library did little to satisfy Virginia's obligation to assist death row inmates in the preparation and filing of meaningful legal papers as required by Bounds. The district court then turned to the examination of the assistance presently provided by Virginia to determine if it met the constitutional requirement.
 
 
 12
 The district court found that the assistance provided by unit attorneys was inadequate both in fact and in law. Evidence produced at trial indicated that seven institutional attorneys were attempting to meet the needs of over 2,000 prisoners and that each attorney could not adequately handle more than one capital case at a time. In addition, the unit attorneys were not hired to work full time. The district court also noted that even if Virginia appointed unit attorneys to service only the death row inmates, its duty under Bounds would not be fulfilled because the scope of assistance was too limited.[3] The district court concluded that only the continuous services of an attorney to investigate, research, and present claimed violations of fundamental rights could provide death row inmates the meaningful access to the courts guaranteed by the Constitution and that the assistance of unit attorneys fell short of this requirement.
 
 
 13
 The district court then turned to the second form of legal assistance, provided by appointed attorneys, and found that the timing of the appointment was a fatal defect with respect to the requirements of Bounds. Appointments are made under Va.Code Sec. 14.1-183 only after a petition is filed and then only if a nonfrivolous claim is raised. Thus, the district court reasoned, the inmate would not receive the attorney's assistance in the critical stages of developing his claims.[4] The district court concluded that in view of the inadequacy of the assistance provided by Virginia and the scarcity of competent and willing counsel to assist indigent death row inmates seeking post-conviction remedies,[5] such relief was necessary and warranted.[6] In order to provide effective relief, the district court held that Virginia must provide death row inmates trained legal assistance in their state post-conviction proceedings.
 
 II.
 
 14
 On appeal, the State contends that the constitutional right of access to the courts does not require appointment of counsel for death row inmates in state habeas corpus proceedings and that Virginia provides constitutionally adequate legal assistance to death row inmates. Alternatively, the State argues that the Supreme Court has determined in Pennsylvania v. Finley, --- U.S. ----, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), that there is no constitutional right to counsel in state post-conviction proceedings. On cross-appeal, the death row inmates contend that the district court's reading of Bounds limiting its application to state post-conviction proceedings, does not adhere to the current state of the law. We disagree with all of these contentions and address them seriatim.
 
 
 15
 We are persuaded by the well reasoned opinion of the district court that legal assistance presently available to Virginia death row inmates in state post-conviction proceedings fails to meet the constitutional requirement of meaningful access to the courts as set forth in Bounds. It is now established beyond a doubt that prisoners have a constitutional right of access to the courts. The district court evaluated the existing Virginia program "as a whole to ascertain its compliance with constitutional standards." Bounds, 430 U.S. at 832, 97 S.Ct. at 1500. The district court made findings of fact based upon the record which indicated that Virginia was not in compliance with constitutional rights of access to the courts. Under Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), we cannot say these findings of fact are clearly erroneous. Nor do we find that the district court abused its discretion in formulating the remedy in this case. Milliken v. Bradley, (Milliken II ), 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977).
 
 
 16
 The State's reliance on Pennsylvania v. Finley, supra, as authority for their contention that state prisoners are not constitutionally entitled to state-supplied attorneys in post-conviction proceedings is misplaced. In Finley, the Supreme Court held that the procedural framework of Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), does not apply to the situation in which counsel appointed pursuant to Pennsylvania state law later seeks to withdraw from the representation without first filing a brief. The Court stated that because Pennsylvania was not constitutionally required to provide counsel in post-conviction proceedings, then due process did not require that the counsel's actions comport with the Anders procedures.[7] However, Finley was not a meaningful access case, nor did it address the rule enunciated in Bounds v. Smith. Most significantly, Finley did not involve the death penalty.
 
 
 17
 Both society and affected individuals have a compelling interest in insuring that death sentences have been constitutionally imposed. Moreover, the complexity and difficulty of the legal work involved in challenging a death penalty require particular safeguards in order to insure meaningful access. The Supreme Court has stated that "there is a significant constitutional difference between the death penalty and lesser punishments." Beck v. Alabama, 447 U.S. 625, 637, 100 S.Ct. 2382, 2389, 65 L.Ed.2d 392 (1980). In addition, the Supreme Court recently held that matters affecting an already condemned prisoner call for "no less stringent standards than those demanded in any other aspect of a capital proceeding." Ford v. Wainwright, 477 U.S. 399, 411-12, 106 S.Ct. 2595, 2603, 91 L.Ed.2d 335 (1986). See also, Booth v. Maryland, --- U.S. ----, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) ("death is a punishment different from all other sanctions.")[8] We do not, therefore, read Finley as suggesting that the counsel cannot be required under the unique circumstances of post-conviction proceedings involving a challenge to the death penalty.
 
 III.
 
 18
 The death row inmates argue that the district court erred in denying counsel for federal habeas corpus and certiorari petitions. We disagree. In Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), the Supreme Court rejected a claim that states must appoint counsel for indigents seeking a writ of certiorari. The Court also observed that in considering a writ of certiorari it would have available appellate briefs, a transcript and state court opinions. Similarly, a federal court considering a petition for habeas corpus would also have briefs of counsel, a transcript and opinions because of the exhaustion of remedies requirement.
 
 
 19
 Virginia provides for a mandatory appeal for capital convictions and death sentences and counsel is provided for this appeal. The death row inmates would have available the appellate briefs, transcripts and state court opinions to use in their writs of certiorari. If the inmates are provided with court-appointed attorneys in their state post-conviction proceedings, they will have briefs, transcripts and opinions to use in their federal habeas corpus proceedings. We conclude that the provision of assistance of attorneys at these points insure that the inmates are provided with meaningful access to the federal courts in their federal post-conviction proceedings.
 
 IV.
 
 20
 Accordingly, for all the foregoing reasons, the judgment of the district court is affirmed.
 
 
 21
 AFFIRMED.
 
 
 22
 WIDENER, Circuit Judge, concurring and dissenting:
 
 
 23
 I concur in Judge Wilkins' separate opinion without reservation, but I would add a few words.
 
 
 24
 * I am doubtful indeed that the plaintiffs in this case have standing to prosecute their case. As Judge Wilkins has demonstrated in his dissenting opinion "... the record does clearly establish that all death row inmates have always been represented by counsel in state post-conviction proceedings." The majority opinion does not refute this factual statement.
 
 
 25
 In Allen v. Wright, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), the Court stated that "[t]he requirement of standing, however, has a core component derived directly from the Constitution. A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." 468 U.S. at 751, 104 S.Ct. at 3324. The Court relied for that proposition on its recent opinion in Valley Forge College v. Americans United, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Because the plaintiffs and their class have always had appointed attorneys upon request, I suggest they have no standing to prosecute this case.
 
 
 26
 This suggestion, however, does not meet with favor, so I will continue. Cf. Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981).
 
 II
 
 27
 I am at a loss to understand the logic of the majority decision which holds that appointed attorneys are not required in federal habeas corpus proceedings which examine the merits of the prisoners' claims but are required in state habeas corpus proceedings which, even if unsuccessful (as must be contemplated in the context present here), go no further than exhaustion of state remedies and fact finding.
 
 III
 
 28
 One cannot but read the majority opinion without the feeling that the Commonwealth considers death row inmates some kind of second class citizens who get second class service, for, when access to the federal courts is provided, p. 1122, attorneys are not required, p. 1122, but, when access to the state courts is provided, attorneys are. Only lightly veiled is the inference that neither the courts nor the legislature of Virginia see fit to take proper care of those unfortunates.
 
 
 29
 An example which refutes this implied charge of insensitivity is Virginia's treatment of those accused of felony. In Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Court established the right under the federal Constitution that one accused of felony, if indigent, has the right to have an attorney represent him in the criminal proceeding. Almost 70 years before, in Barnes v. Commonwealth, 23 S.E. 784 (Va.1895), the Supreme Court of Virginia established that same right under the Virginia Constitution: "Every person convicted of crime has a constitutional right to have counsel to aid him in making his defense, but no one is compelled to have counsel." 23 S.E. at 787. And the Court added that "in the defense of one 'who has the double misfortune to be stricken with poverty and accused of crime. No .. [attorney] is at liberty to decline such appointment, and few it is hoped would be disposed to do so.' " 23 S.E. at 6787, quoting Cooley on Constitutional Limitations. The Barnes decision has been consistently followed in Virginia ever since, and indeed was codified in 1940, more than 20 years before Gideon. Virginia Acts of Assembly, 1940, ch. 218.
 
 
 30
 So, neither the courts nor the legislature of the Commonwealth has been insensitive to the needs of those accused of crime, and other Virginia statutes yet provide for the obligatory appointment of counsel in habeas corpus proceedings where a hearing is to be held, as Judge Wilkins demonstrates in his opinion, but which appointment authority has in fact been honored by the Virginia courts in all cases as the record demonstrates, even when not obliged.
 
 
 31
 In sum, I do not agree with either the tenor or effect of the majority decision.
 
 
 32
 WILKINSON, Circuit Judge, concurring in part and dissenting in part:
 
 
 33
 I join Judge Wilkins' concurring and dissenting opinion. He demonstrates well that the majority's holding is impossible to square with the Supreme Court's decisions in Pennsylvania v. Finley, --- U.S. ----, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), and Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). This creation of a right sans constitutional basis not only contravenes Supreme Court precedent but also disregards the independence of state judicial systems and the respective spheres of legislative and judicial competence.
 
 
 34
 The federal interest in the form of state post-conviction review is an attenuated one. It is beyond question that a state has no constitutional obligation to provide post-conviction review. E.g., Finley, 107 S.Ct. at 1994. This is so because post-conviction relief is not a part of the criminal trial itself, but a separate civil proceeding. Id. The plaintiffs in this case do not seek to have lawyers appointed at state expense in order to defend themselves from state allegations of which they are presumed innocent. Rather, they seek the services of a lawyer as a sword to overturn a prior determination of guilt that is presumed to be valid. Ross, 417 U.S. at 610-11, 94 S.Ct. at 2443-44.
 
 
 35
 This analysis applies with equal force in capital cases. "[D]irect appeal is the primary avenue for review of a conviction or sentence, and death penalty cases are no exception." Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391, 77 L.Ed.2d 1090 (1983). Once the direct appeal process is complete, a presumption of legality and finality attaches to the conviction and sentence. Id. Although the Constitution requires that the death penalty may be imposed only through procedures that provide the highest degree of reliability, there is no support for the view that death penalty cases are subject to a separate set of standards for post-conviction review. See, e.g., Smith v. Murray, 477 U.S. 527, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986) (rejecting a separate standard for procedural foreclosure in capital cases).
 
 
 36
 The limited scope of federal habeas corpus further demonstrates that the federal interest in the form of state post-conviction relief is minimal. The intrusion on state interests that federal habeas entails may be exercised only for a narrow purpose, to challenge unconstitutional confinement. Thus the Courts of Appeals overwhelmingly hold that federal habeas corpus is not available to challenge alleged defects in state post-conviction proceedings. See Kirby v. Dutton, 794 F.2d 245 (6th Cir.1986); Vail v. Procunier, 747 F.2d 277 (5th Cir.1984); Mitchell v. Wyrick, 727 F.2d 773 (8th Cir.1984). The principle expressed in these habeas cases is directly applicable to the section 1983 claims presented here. The plaintiffs' claims have drawn the federal courts into an area where the federal interest is small and the costs to federal-state relations will be great.
 
 
 37
 The majority has lost sight of the fact that in our dual system, the states no less than the federal government are responsible for the protection of constitutional rights. Where a state criminal proceeding is involved, the Supreme Court has emphasized that the state's role is paramount. See, e.g., Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Federal courts should act with caution where they are asked to create novel rights that intrude significantly on state functions. The lack of such caution is all the more startling here, where Virginia provides unit attorneys at its prison facilities to assist death row inmates and where Virginia courts are required to appoint counsel to represent such inmates in presenting nonfrivolous claims. Darnell v. Peyton, 208 Va. 675, 160 S.E.2d 749 (Va.1968).
 
 
 38
 I can perceive no basis for the district court's decision other than a policy judgment that it would be a good idea to provide state inmates counsel at state expense to pursue state post-conviction remedies. That policy judgment may well be correct, but the judgment is for the state legislature, the state Attorney General's office, and the state courts to make, not the federal judiciary. We have been presented with much stimulating argument on the benefits that state-provided counsel would bring, but far less on the constitutional basis for requiring it. We have been invited to issue what is at bottom a legislative proclamation of displeasure with a controversial penalty which the Supreme Court has held is within the province of the states to impose.
 
 
 39
 The nature of the factual findings on which this proclamation would be based does not lessen my objections. The majority relies on the deference that is accorded to particularized findings of fact by trial courts. Yet the findings of fact in this case are broad generalizations. Indeed, if this case turns on the individual state of mind of the condemned prisoner, or the amount of time between conviction and imposition of a particular sentence, it is difficult to see how the commonality requirement of Fed.R.Civ.P. 23 could ever have been met. The class action device undoubtedly widens the focus of a case, but it should not be taken as a grant of unlimited federal judicial authority.
 
 
 40
 Judicial legislation brings with it unique costs. By purporting to base the requirement of state post-conviction counsel in the Constitution, the court has created a rigid rule that may not readily be altered in the event of unforeseen results. Although the new right to post-conviction counsel does not appear to arise from the Sixth Amendment, it will presumably carry with it some entitlement to "effective assistance." Provision of counsel on constitutional grounds also brings with it a panoply of procedural requirements such as those at issue in Finley, supra (addressing procedural requirements for withdrawal of counsel under Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) ). What is more, by analogy to previous "meaningful access" cases, future plaintiffs are likely to argue that they are entitled to counsel in section 1983 suits as well. Cf. Wolff v. McDonnell, 418 U.S. 539, 577-80, 94 S.Ct. 2963, 2985-86, 41 L.Ed.2d 935 (1974). It is hard to imagine a more fertile ground for litigation than that provided by these entitlements. The likely result will be additional cycles of prisoner litigation in every capital case, each ever further removed from the proper focus of criminal adjudication--the trial itself.
 
 
 41
 State post-conviction remedies will now move one step closer to the status of a federal protectorate. The irony is that the development of state post-trial remedies has always held substantial promise that the states themselves would assume the primary responsibility for collateral review of state criminal convictions. If every state initiative is to involve yet another blanket of federal administrative oversight, the capacity and incentives for the states to undertake meaningful reforms will disappear. The guarantees of our Bill of Rights provide important federal safeguards for state criminal trials; they have not to this point been thought to impose a federal model of state post-conviction review.
 
 
 42
 Circuit Judge CHAPMAN has asked to be shown as joining in this opinion.
 
 
 43
 WILKINS, Circuit Judge, concurring in part and dissenting in part:
 
 
 44
 The question before us is whether the Commonwealth of Virginia must automatically, upon request, provide death row inmates with appointed counsel to prepare and file state or federal post-conviction petitions in order to meet its obligation under Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Under the guise of meaningful access, the majority has established a right to appointed counsel where none is required by the Constitution. Therefore, while I concur with the majority that there is no right to assistance of counsel with regard to federal petitions, I respectfully dissent with regard to state petitions.
 
 
 45
 The district court clearly erred in concluding that the Commonwealth of Virginia was not meeting its obligation under Bounds to provide death row inmates with meaningful access to the courts. Further, there is no factual or legal justification for requiring a per se exception for this class of inmates.
 
 I.
 
 46
 In Bounds, the Supreme Court held that the constitutional right of access to the courts is satisfied by providing inmates "adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828, 97 S.Ct. at 1498. Except as to death row inmates, the fact that Virginia is in full compliance with Bounds is not disputed. Even the inmate who initiated this action, Giarratano, conceded that Virginia provides a "decent" law library which includes Federal Supplement, Federal Reports, United States Supreme Court Reporter, the Federal Digest, Virginia Reports, and the United States Code. Also, death row inmates are provided copies of the transcript, briefs, and state court opinion from the initial automatic appeal of their conviction.
 
 
 47
 In addition to satisfying the requirements of meaningful access by providing an adequate law library, Virginia also provides a system of institutional attorneys to assist inmates. Although the majority states that Virginia institutional attorneys, approximately two or three per facility, are "attempting to meet the needs of over 2,000 prisoners," the record does not establish how many of those prisoners are actually involved in post-conviction or other litigation. But the record does clearly establish that all death row inmates have always been represented by counsel in state post-conviction proceedings.
 
 
 48
 Further, counsel is appointed under Va.Code Ann. Sec. 14.1-183 (1950, Repl.Vol. 1985 & Supp.1987) for any state post-conviction petition which raises a nonfrivolous issue and requires a hearing. Virginia also allows liberal amendment to pro se habeas corpus petitions. Plaintiffs' expert on Virginia post-conviction proceedings testified that he had no firsthand knowledge of a Virginia Circuit Court ever denying amendment to a habeas corpus petition in a capital case.
 
 
 49
 A. Meaningful Access and Pennsylvania v. Finley
 
 
 50
 After the district court rendered its decision the Supreme Court decided Pennsylvania v. Finley, 481 U.S. ----, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). In that case the Court held that the procedures articulated in Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), which must be satisfied before appointed counsel may withdraw from a frivolous appeal, do not apply to state post-conviction proceedings because there is no constitutional right to counsel in those proceedings:
 
 
 51
 Anders did not set down an independent constitutional command that all lawyers, in all proceedings, must follow these particular procedures. Rather, Anders established a prophylactic framework that is relevant when, and only when, a litigant has a previously established constitutional right to counsel.
 
 
 52
 We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks to their convictions, and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further.
 
 
 53
 Finley, 481 U.S. at ----, 107 S.Ct. at 1993, 95 L.Ed.2d at 545 (citation omitted).
 
 
 54
 The majority concludes that "[t]he State's reliance on [Finley ] as authority for their contention that state prisoners are not constitutionally entitled to state-supplied attorneys in post-conviction proceedings is misplaced." The majority seeks to distinguish Finley because it "was not a meaningful access case, nor did it address the rule enunciated in Bounds v. Smith. Most significantly, Finley did not involve the death penalty." These distinctions are unpersuasive in light of Finley's clear statement of existing law.
 
 
 55
 The decision in Finley relies heavily on Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). In Ross, the Supreme Court held that states are not required to appoint counsel for indigents seeking a writ of certiorari. In the plainest language the decision is grounded upon principles of meaningful access: "We do not believe that it can be said, therefore, that a defendant in respondent's circumstances is denied meaningful access to the North Carolina Supreme Court simply because the State does not appoint counsel to aid him in seeking [discretionary] review in that court." Id. at 615, 94 S.Ct. at 2446.
 
 
 56
 The reasoning of Ross effectively compelled the result reached in Finley:
 
 
 57
 We think that the analysis that we followed in Ross forecloses respondent's constitutional claim. The procedures followed by respondent's habeas counsel fully comported with fundamental fairness. Postconviction relief is even further removed from the criminal trial than is discretionary direct review.... States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well.
 
 
 58
 Nor was the equal protection guarantee of "meaningful access" violated in this case. ... In Ross, we concluded that the defendant's access to the trial record and the appellate briefs and opinions provided sufficient tools for the pro se litigant to gain meaningful access to courts that possess a discretionary power of review. We think that the same conclusion necessarily obtains with respect to postconviction review.
 
 
 59
 Finley, 481 U.S. at ----, 107 S.Ct. at 1994, 95 L.Ed.2d at 547 (citations omitted). In view of this language, I cannot agree with the majority that Finley was not a meaningful access case.
 
 
 60
 The result in Finley was compelled because there was no fundamental right to counsel in the first instance, a factor that was essential to the result reached. It was this, rather than the potentially distinguishable nature of the proceedings (appellate in Anders versus trial in Finley ), which dictated the outcome. We are concerned here with the identical type of proceeding addressed in Finley, state habeas corpus, on the heels of a clear and recent statement by the Supreme Court that there is no previously established constitutional right to counsel in state habeas corpus proceedings.
 
 
 61
 The majority would additionally distinguish Finley because it did not "address the rule enunciated in Bounds v. Smith." In Bounds the issue was access to "sources of legal knowledge" to prepare meaningful papers, 430 U.S. at 817, 97 S.Ct. at 1493, and the Court explicitly stated that, for inmates seeking to file post-conviction papers, meaningful access to the courts can be satisfied by either providing adequate law libraries or "adequate assistance from persons trained in the law." Id. at 828, 97 S.Ct. at 1498. The rule of Bounds was not addressed in Finley because Bounds was not intended to imply a broad-based right of counsel as the majority now would have it interpreted. Hooks v. Wainwright, 775 F.2d 1433 (11th Cir.1985), cert. denied, --- U.S. ----, 107 S.Ct. 313, 93 L.Ed.2d 287 (1986).
 
 
 62
 The final basis upon which the majority seeks to distinguish Finley is that it did not involve the death penalty and "there is a significant constitutional difference between the death penalty and lesser punishments." Beck v. Alabama, 447 U.S. 625, 637, 100 S.Ct. 2382, 2389, 65 L.Ed.2d 392 (1980). Therefore, the question is essentially whether on the record before us Plaintiffs constitute an exception to Finley, or justify an exceptional application of Bounds.
 
 
 63
 B. The Death Penalty and Virginia Procedures
 
 
 64
 It is now settled that a state may impose a sentence of death on a defendant convicted of aggravated murder. Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Since Gregg, the Supreme Court has focused on "the procedures by which convicted defendants were selected for the death penalty rather than on the actual punishment inflicted." Id. at 179, 96 S.Ct. at 2928. The "significant constitutional difference" of which the majority speaks is invoked out of context. The "constitutional difference" is, under Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) and subsequent decisions, essentially concerned with a sentencing system which must not be arbitrary and capricious in its application; that is, it must not be "cruel and unusual in the same way that being struck by lightning is cruel and unusual." Furman, 408 U.S. at 309, 92 S.Ct. at 2782 (Stewart, J., concurring).
 
 
 65
 Under Furman, the sentencing procedures considered were unconstitutional because the death penalty was, by virtue of unguided decision-making, "so wantonly and so freakishly imposed." Id. at 310, 92 S.Ct. at 2763. Thus, the "significant constitutional difference" mandated the establishment of procedures to ensure that circumstances under which individual sentences of death are imposed demonstrate a principled, consistent basis for the factfinding decision, and a greater degree of reliability than is required in noncapital sentencing. See Gregg, 428 U.S. at 206-07, 96 S.Ct. at 2940; Beck v. Alabama, 447 U.S. at 637-38, 100 S.Ct. at 2389-90 ("significant constitutional difference" means that the procedural rules by which a sentence of death is imposed must not diminish the reliability of the sentencing phase of the proceeding, or the guilt phase upon which it is predicated); Booth v. Maryland, 482 U.S. ----, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) (a state statute that requires consideration of a victim impact statement at the sentencing phase of proceedings creates an unconstitutional risk of a death sentence based upon impermissible or irrelevant considerations); Ford v. Wainwright, 477 U.S. 399, 425, 106 S.Ct. 2595, 2610, 91 L.Ed.2d 335 (1986) (Powell, J., concurring) ("heightened procedural requirements on capital trials and sentencing proceedings" do not apply in the context of post-sentencing proceedings). This "difference," significant as it is, is not a basis upon which we may begin implying a separate panoply of additional constitutional standards only applicable to collateral challenges in death penalty cases. See Strickland v. Washington, 466 U.S. 668, 686-87, 104 S.Ct. 2052, 2063-64, 80 L.Ed.2d 674 (1984) (in both capital and noncapital cases, the same principle governs claims as to effective assistance of counsel).
 
 
 66
 The Commonwealth of Virginia allows a sentence of death only in cases of aggravated murder. Va.Code Ann. Sec. 18.2-31 (1950, Repl.Vol. 1982 & Supp.1987). Appeal is automatic from a sentence of death, Va.Code Ann. Sec. 17-110.1A (1950 & Repl.Vol. 1982), and procedural safeguards in excess of that required by the Constitution are provided, such as proportionality review of the sentence imposed in each case. Va.Code Ann. Sec. 17-110.1C.2 (1950 & Repl.Vol.1982); compare Pulley v. Harris, 465 U.S. 37, 50-51, 104 S.Ct. 871, 879, 79 L.Ed.2d 29 (1984) ("There is thus no basis in our cases for holding that comparative proportionality review by an appellate court is required in every case in which the death penalty is imposed and the defendant requests it."). At trial and on the first appeal of right, the defendant is guaranteed the assistance of appointed counsel as required by the Constitution. The Constitution does not provide a right to counsel appointed at state expense in subsequent proceedings, Ross, 417 U.S. at 610-11, 94 S.Ct. at 2443-44; Finley, 481 U.S. at ----, 107 S.Ct. at 1992, 95 L.Ed.2d at 545, although a state may as a matter of legislative choice make counsel available to convicted defendants at all stages of judicial review. Ross, 417 U.S. at 618, 94 S.Ct. at 2447. It is significant that the issue of counsel arose in Finley solely because Finley sought to expand a state policy Pennsylvania has followed since 1967 which "imposes a mandatory requirement upon the trial court to appoint counsel for an indigent post conviction applicant." Commonwealth v. Mitchell, 427 Pa. 395, 235 A.2d 148, 149 (1967); see Finley, 481 U.S. at ----, 107 S.Ct. at 1995, 95 L.Ed.2d at 548. Similarly, Virginia courts may appoint counsel to assist in state post-conviction proceedings, Va.Code Ann. Sec. 14.1-183 (1950, Repl.Vol. 1985 & Supp.1987), and are required to appoint counsel in cases involving nonfrivolous claims that require an evidentiary hearing. Darnell v. Peyton, 208 Va. 675, 160 S.E.2d 749 (1968). The Virginia procedure is similar to the procedure followed in the federal courts for review of state prisoner petitions under 28 U.S.C.A. Sec. 2254 (West 1977). Rules Governing Sec. 2254 Cases, Rule 8(a), (c).
 
 II.
 
 67
 In addition to there being no fundamental right to automatic appointment of counsel, there is no factual basis to support the majority's extension of Bounds. Under Anderson v. Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), we must accept the district court's findings of fact unless clearly erroneous. The district court's per se exception to the standards of Bounds is grounded on three premises, none of which are supported by the record: emotional instability of death row inmates as a result of the circumstances of their confinement; the degree of legal complexity unique to death penalty cases; and severe time constraints before execution of sentence.
 
 
 68
 As to the first premise, the thought of execution may exact an emotional toll. But, the district court's conclusion that death row inmates are rendered incapable of initiating post-conviction petitions is simply not supported by the facts presented. For example, Giarratano has successfully prosecuted other pro se actions while on death row. See Giarratano v. Bass, 596 F.Supp. 818 (E.D.Va.1984). And counsel for the inmates conceded during oral argument, "the record does not contain evidence of specific inmates, currently or in the past," where this premise applies.
 
 
 69
 The record additionally fails to establish that there is a unique legal complexity to death penalty cases. Though the facts and issues of criminal cases are of varying complexity, "the legal standards for constitutionally effective assistance of counsel are constant." Washington v. Watkins, 655 F.2d 1346, 1357 (5th Cir.1981), cert. denied, 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982). Indeed, the same argument of "complexity" could be advanced by other inmates to compel appointment of counsel in noncapital post-conviction murder cases to raise complex issues involving burden-shifting presumptions, or by federal inmates prosecuted under 18 U.S.C.A. Sec. 1963 (West 1984 & Supp.1987) (RICO) or 21 U.S.C.A. Sec. 848 (West 1981 & Supp.1987) (Continuing Criminal Enterprise). Further, other than the occasional reference to the "esoteric," "intricate" or "frequently sophisticated" nature of capital cases, the complexity addressed in this record refers to factual complexity and the need for factual "re-investigation." This obscures the fact that the standards of assessing the fairness of a capital prosecution are the same as those for other criminal cases, Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as well as the fact that the purpose of the right to counsel is not to provide a defendant with a private investigator. United States v. Gouveia, 467 U.S. 180, 191, 104 S.Ct. 2292, 2299, 81 L.Ed.2d 146 (1984). Plaintiffs' witnesses also described two cases purportedly demonstrating the need for complete factual re-investigation, but later conceded that in each instance the habeas corpus petition was actually based on information gained from the transcript of trial. Finally, during oral argument the inmates' counsel agreed that the record did not contain a single example of a case or issue which would provide a basis for the district court's conclusion, nor could one, understandably, be posited by way of illustration.
 
 
 70
 As to the third premise, the evidence presented does not indicate that Virginia death row inmates are given a limited amount of time to prepare and present their petitions to the courts. Rather, the evidence establishes the contrary. For example, the initiating Plaintiff of the class, Giarratano, has been on death row in Virginia for eight years. The record indicates that a substantial period of time passed between the affirmance of his conviction by the Virginia Supreme Court and the initiation of state or federal habeas corpus proceedings. Another inmate in the class, James Clark, has been on death row since 1979. Clark v. Commonwealth, 220 Va. 201, 257 S.E.2d 784 (1979), cert. denied, 444 U.S. 1049, 100 S.Ct. 741, 62 L.Ed.2d 736 (1980). His sentence was vacated on a state habeas corpus petition, based on an initial finding of ineffective assistance of counsel. This finding was reversed by the Supreme Court of Virginia in June, 1984 and the trial court was "directed to fix a date for Clark's execution." Virginia Dep't of Corrections v. Clark, 227 Va. 525, 318 S.E.2d 399, 406 (1984). Testimony of Clark's counsel established that efforts on his behalf are ongoing.
 
 
 71
 The history of inmates on death row in the Commonwealth of Virginia is consistent with the histories of capital cases throughout the nation. U.S. Dep't of Justice, Bureau of Justice Statistics Bulletin, Capital Punishment, 1986 at 1, 8. It is not uncommon to find death penalty cases which have been in litigation for as much as "a full decade, with repetitive and careful reviews by both state and federal courts," as well as by the Supreme Court. Sullivan v. Wainwright, 464 U.S. 109, 112, 104 S.Ct. 450, 451, 78 L.Ed.2d 210 (1983) (application for stay of execution denied); Songer v. Wainwright, 469 U.S. 1133, 105 S.Ct. 817, 83 L.Ed.2d 809 (1985) (Brennan, J., dissenting from denial of petition for certiorari to review sentence of death imposed in 1974). The facts, other reliable data, and common experience all show significant delay rather than a "limited amount of time" in death penalty cases.
 
 III.
 
 72
 Under the majority's analysis Virginia death row inmates are to be automatically provided counsel upon request for preparing state habeas corpus petitions, but are denied this right for preparation of federal habeas petitions. I concur in the majority's conclusion that the Constitution does not require automatic appointment of counsel for the latter, but I disagree with the reasoning. The majority bases its distinction in treatment upon the fact that federal habeas proceedings are analogous to the situation in Ross in which a claim for appointed counsel to seek a writ of certiorari was rejected because of availability of appellate briefs, a transcript and state court opinions. The distinction obscures the fact that inmates will also routinely have appellate briefs, a transcript, and state court opinions in mounting a challenge to their conviction in state court. They will also be pursuing claims under liberal pleading and amendment rules that are essentially the same as those followed in the federal courts, and will in fact be provided counsel under essentially the same standard in both the state and federal courts in Virginia.
 
 IV.
 
 73
 In testimony before the district court there was reference to an agency created by the State of Florida to handle post-conviction capital cases in that state. The district court apparently concluded that this would be appropriate for the Commonwealth of Virginia, and has effectively ordered it to create such an agency. While the Commonwealth of Virginia and other states may elect to adopt this procedure, we have no authority to order it. Federal courts are not empowered to act as "a roving commission to impose ... [our] own notions of enlightened policy. ... [T]he question for decision is not whether we applaud or even whether we personally approve the procedures followed in [this case]. The question is whether those procedures fall below the minimum level the [Constitution] will tolerate." Spencer v. Texas, 385 U.S. 554, 569, 87 S.Ct. 648, 656, 17 L.Ed.2d 606 (1967) (Stewart, J., concurring). The record before us clearly demonstrates that Virginia's procedures more than satisfy constitutional requirements.
 
 
 74
 I therefore dissent from the majority's rule requiring automatic appointment of counsel upon request for assistance in preparing state habeas corpus petitions. I concur in the majority's decision not to apply this rule with regard to preparation of federal habeas corpus petitions.
 
 
 75
 Circuit Judges WIDENER, CHAPMAN and WILKINSON have asked to be shown as joining in this separate opinion.
 
 
 
 [1]
 Va.Code Sec. 14.1-183 was amended in 1987 to delete the six-month residency requirement. (Repl.Vol. 1985 & Supp.1987). However, this change in the Code does not alter our disposition of this appeal
 
 
 [2]
 These grounds included the sixth amendment, eighth amendment, fourteenth amendment due process clause, Article I, the equal protection clause, and the right of access to the courts
 
 
 [3]
 The evidence indicated that the unit attorneys do not perform factual inquiries, sign pleadings, or make court appearances. Instead, they act only as legal advisors
 
 
 [4]
 This assistance is particularly critical in Virginia where all claims, the facts of which are known at the time of filing, must be included in that petition as they may not be raised successfully in a subsequent filing and those claims also could not be considered in federal court because federal courts generally may not consider claims barred by Virginia procedural rules. Whitley v. Bair, 802 F.2d 1487 (4th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1618, 94 L.Ed.2d 802 (1987), and Smith v. Murray, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986)
 
 
 [5]
 The district court found that in the past Virginia had perceived no need to provide counsel to death row inmates pursuing post-conviction relief because attorneys volunteered their services or were recruited to provide pro bono assistance to death row prisoners. However, the evidence presented at trial established that few attorneys are now willing to voluntarily represent death row inmates in post-conviction efforts
 
 
 [6]
 The district court's order specifically provided that:
 (1) indigent Virginia death row inmates are entitled to the appointment of counsel upon request to assist them in pursuing habeas corpus relief in the state courts;
 (2) defendants shall develop a system whereby attorneys may be appointed to the death row inmates individually as provided above;
 (3) plaintiffs are entitled to their taxable costs and attorney fees as provided by law; and
 (4) counsel for the parties shall attempt to reach an agreement as to counsel fees. Any such agreement shall be without prejudice to defendants' right to contest the right of plaintiffs to recover same.
 
 
 [7]
 The Anders procedures require counsel to perform a conscientious evaluation of the record, to write a brief referring to arguable support in the record and to give notice to the client
 
 
 [8]
 Because of the peculiar nature of the death penalty, we find it difficult to envision any situation in which appointed counsel would not be required in state post-conviction proceedings when a prisoner under the sentence of death could not afford an attorney